# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF
# FLORIDA

## Broward Division

**SCOTT THOMAS,**

    **Plaintiff,**

    v.                        CASE NO.: 19-61324-CIV-DIMITROULEAS

                              JURY TRIAL DEMANDED

**BROWARD COUNTY SHERRIFF'S OFFICE,**

    **Defendant.**

_____/

## FIRST AMENDED COMPLAINT

**COMES NOW,** Plaintiff Scott Thomas, by and through the undersigned counsel, and hereby files this Complaint against Defendant Broward County Sheriff's Office (Defendant BSO, hereinafter) for violations of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), as amended, 38 U.S.C. §§ 4301-4335.

## PARTIES, JURISDICTION, AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 38 U. S.C. § 4323(b).

2. The United States District Court for the Southern District of Florida is a proper venue for this action under 38 U.S.C. §4323(c)(2) because Plaintiff Thomas currently, and at all material times relevant to this Complaint, resides in Palm Beach County, Florida and Defendant maintains its principal place of business in Broward County.

3. Plaintiff Scott Thomas is a former employee of Defendant.

4. Defendant is an employer as defined under USERRA 38 U.S.C. § 4303(4)(A), because it employed, managed, and controlled Plaintiff's daily activities and had authority over his employment opportunities while he was employed by the Defendant.

5. Plaintiff is a United States military veteran who served his country as a Helicopter Pilot in the United States Army from May 2004 until his honorable release in December of 2011.

6. This Court has jurisdiction over Plaintiffs' claims pursuant to 38 U.S.C. § 4323(b)(3).

## FACTS GIVING RISE TO RELIEF

7. Plaintiff was initially hired by BSO as an Air Rescue Helicopter Pilot on November 8, 2018.

8. During the interview process, Plaintiff interviewed with Brian Miller.

9. In the course of that interview, Plaintiff disclosed potential discrepancies with his log book due to covert flights performed while working for the Federal Bureau of Investigations (FBI) and the Central Intelligence Agency (CIA) to Brian Miller, who was fully advised of potential conflict.

10. With full knowledge of potential conflicts, Defendant Broward County Sheriff's Office extended an offer of employment to Plaintiff.

11. In early November 2018, Danielle Fuller was appointed to Interim Director of Operations.

12. In early December 2018, Ms. Fuller expressed her anti-military bias by

stating to Plaintiff that military pilots were being brought into BSO to serve in the air rescue division instead of civilian pilots with part 135 experience and she did not believe that that was fair.

13. On December 26, 2018, Ms. Fuller again expressed her displeasure with being in the industry for fifteen (15) years and having the same position as military pilots with little or no civilian or part 135 experience. She continued to express her disgust stating that she could not go into the military and be given the same position as someone who had fifteen (15) years of military flight experience. She concluded that she knew plenty of people in the industry that were better qualified for the position because they were civilian trained pilots with part 135 experience and would be happy to live in south Florida.

14. On January 16, 2019, Ms. Fuller again voiced her repugnance for military pilots, claiming they were not qualified for service in her unit. Plaintiff protested and complained about her disparaging comments about military personnel and Ms. Fuller immediately changed the subject.

15. On January 17, 2019 during a closed-door meeting with Chief Smith and Pilot Brian McDonald, Plaintiff complained about Ms. Fuller's discrimination on the basis of his military service. In response, Chief Smith indicated that he would ask Chief Nugent to have a one-on-one conversation with all Pilots within the unit to individually address their concerns.

16. On January 18, 2019 Chief Nugent arrived at BSOFR No. 17 at 3:30 pm. Instead of Chief Nugent conducting individual meetings with each pilot, she chose to have a discussion in a group setting to allow the pilots to air any grievances they had

concerning Ms. Fuller.

17. On January 28, 2019, eleven (11) days after his complaint of discrimination to Chief Smith, Plaintiff was called into a meeting with Chief Nugent, Deputy Jesse Madrigal and Interim Director Fuller. At the start of the meeting Plaintiff was informed by Chief Nugent that he was being terminated for discrepancies in his flight log book. Plaintiff protested and stated that any discrepancies could easily be explained.

18. Plaintiff was not given any opportunity to address the perceived inaccurate discrepancies.

19. Plaintiff is informed and believes that BSO treated Plaintiff differently than similarly situated non-military pilots by refusing to give him an opportunity to correct his flight log or address the concerns raised by Chief Nugent and Interim Director Fuller.

20. Plaintiff explained to both the Chief and Interim Director that the log book which documented the explanation for any discrepancies was being housed in a storage unit in Fredericksburg Virginia and that he could easily provide them with the documentation given a reasonable opportunity to obtain the log book.

21. Instead of affording Plaintiff an opportunity to prove that any discrepancies in his log book tendered to Ms. Fuller were mere oversights that were not critical in any way, Ms. Fuller used two insignificant scrivener's errors to justify Plaintiff's termination.

22. Thereafter, Chief Nugent gave Plaintiff two documents; a termination letter and a resignation letter. Plaintiff was told that he would be better off resigning by

Chief Nugent because if he was fired he would no longer be able to obtain employment with any other state or local police organizations. She then ordered Plaintiff to sign the resignation letter drafted by Chief Nugent and dated for February 1, 201.

23. Shocked by the decision to fire Plaintiff because of his complaints of discrimination on the basis of his military service, Plaintiff requested he be allowed to discuss the matter with an attorney.

24. Chief Nugent informed Plaintiff he would be fired if he did so and he would not be able to obtain any work for any other state or local government police organization. Faced with no other option, Plaintiff did as Chief Nugent ordered and signed the separation form indicating he was resigning.

25. On January 31, 2019 prior to his resignation taking effect, Plaintiff filed a complaint detailing the Discrimination under USERRA with the City Attorney and the Broward County Sheriff.

26. Due to the close temporal proximity in time between the termination of Plaintiff and his complaint of unlawful discrimination eleven (11) days prior to his termination, Plaintiff believes he was unlawfully terminated in violation of USERRA.

27. Plaintiff further believes the reasons given by Defendant for his termination is not legitimate and is not the real reason for his termination.

28. Plaintiff submits that the reason proffered by Defendant for his termination was unfounded and manufactured by Defendant, and that the real reason for Plaintiff's termination was due to his military status and service.

29. Shortly after his termination, the FAA confirmed that Plaintiff's log book was in fact accurate as corroborated by the Federal Bureau of Investigation (FBI).

30. Plaintiff alleges that Defendant did not follow its own policies and procedures in disciplining Plaintiff by terminating his employment without providing him any due process to establish that the allegations raised by Interim Director Fuller were without merit.

31. Plaintiff submits that other non-military pilot employees of Defendant who engaged in the same or similar conduct were not disciplined or were not terminated.

32. Plaintiff submits that other non-military pilot employees who have been terminated by Defendant were given an opportunity to correct minor errors in their log books prior to being terminated.

33. Plaintiff has suffered and continues to suffer damages as a result of the unlawful discrimination and retaliation he was subjected to by Defendant BSO.

34. Plaintiffs has retained the undersigned law firm to prosecute this action and have agreed to pay said law firm a reasonable fee for its services.

35. All conditions precedent to filing this action have been satisfied or waived.

## COUNT I
**(Violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), as amended, 38 U.S.C. §§ 4301 *et seq.*; Discrimination pursuant to 38 U.S.C. § 4311(a))**

36. Plaintiff Thomas hereby realleges and incorporates Paragraphs 1-35 as if set forth in full herein.

37. At all times relevant herein, Plaintiff Thomas was an employee of Defendant.

38. At all times relevant herein, Plaintiff Thomas had performed services for the uniformed services as defined by USERRA

39. United States Code 38 Section 4311(a) states:

> "A person who is a member of, applies to be a member of, performs, **has performed**, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." (Emphasis added).

40. Defendant BSO's conduct as described in paragraphs 11 through 32 above, violated 38 U.S.C. § 4311(a). Defendant BSO violated 38 U.S.C. § 4311(a) when, through the conduct of its agents and employees, it intentionally discriminated against Plaintiff Thomas because Plaintiff had performed in the uniformed services as defined by USERRA.

41. Specifically, Defendant BSO violated 38 U.S.C. § 4311(a) by subjected Plaintiff to adverse employment actions, including but not limited to, terminating Plaintiff Thomas' employment because Plaintiff Thomas' had performed services for the uniformed services as defined by USERRA.

42. Plaintiff Thomas' status as an individual who had performed services for the uniformed services as defined by USERRA was a motivating factor in Defendant BSO subjecting Plaintiff to adverse employment actions, including but not limited to, terminating of Plaintiff Thomas' employment.

43. Defendant BSO would not have taken the same adverse employment actions against Plaintiff Thomas but for his performed services for the uniformed services as defined by USERRA.

44. The acts and omissions committed by Defendant BSO, by and through its agents and employees, which violated Plaintiff Thomas' rights under USERRA were willful.

45. As a direct and proximate result of the actions and omissions committed by

Defendant, by and through its agents and employees, Plaintiff Thomas has suffered and will continue to suffer lost wages, benefits and entitlements.

46. WHEREFORE, Plaintiff Thomas demands judgment against Defendant for damages including but not limited to, lost back pay, lost benefits, lost front pay, and other lost economic damages; an amount equal to lost wages and benefits as liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C); equitable relief in the form of reinstatement and the use of the Court's full equity powers to vindicate fully Plaintiff Thomas' rights or benefits pursuant to 38 U.S.C. § 4323(e); reasonable attorney's fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2); pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

## COUNT II
### (Violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), as amended, 38 U.S.C. §§ 4301 *et seq.*; Discrimination pursuant to 38 U.S.C. § 4311(b))

47. Plaintiff Thomas hereby realleges and incorporates Paragraphs 1-35 as if set forth in full herein.

48. At all times relevant herein, Plaintiff Thomas was an employee of Defendant.

49. At all times relevant herein, Plaintiff Thomas had performed services for the uniformed services as defined by USERRA.

50. United States Code 38 Section 4311(b) states:

> "An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this

>chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed service."

51. Defendant BSO, by and through its agents and employees, as described in paragraphs 11 through 32 above, violated 38 U.S.C. § 4311(b) when it terminated Plaintiff Thomas' employment for complaining about Defendant's unlawful discrimination in violation of 38 U.S.C. §4311(a).

52. Plaintiff Thomas' complaints about Defendant BSO's violation of 38 U.S.C. § 4311(a) was a motivating factor in Defendant BSO subjecting Plaintiff to adverse employment actions, including but not limited to, terminating of Plaintiff Thomas' employment.

53. Defendant BSO would not have taken the same adverse employment actions against Plaintiff Thomas but for his action to enforce a protection afforded under 38 U.S.C. § 4311(a).

54. The acts and omissions committed by Defendant BSO, by and through its agents and employees, which violated Plaintiff Thomas' rights under 38 U.S.C. § 4311(b) were willful.

55. As a direct and proximate result of the actions and omissions committed by Defendant, by and through its agents and employees, Plaintiff Thomas has suffered and will continue to suffer lost wages, benefits and entitlements.

56. WHEREFORE, Plaintiff Thomas demands judgment against Defendant for damages including but not limited to, lost back pay, lost benefits, lost front pay, and other lost economic damages; an amount equal to lost wages and benefits as liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C); equitable relief in the form of reinstatement and the use of the Court's full equity powers to vindicate fully Plaintiff Thomas' rights or benefits pursuant to 38

U.S.C. § 4323(e); reasonable attorney's fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2); pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury with respect to all issues, counts, claims, controversies and damages so triable.

Dated this 24th day of July 2019.

Respectfully submitted,
OBeidy and Associates, P.A.

s/ A. Andrew OBeidy
A. Andrew OBeidy
Florida Bar No. 910341
2755 East Oakland Park Blvd, Suite 225
Fort Lauderdale, Florida 33306
(305) 892-5454
andrew@obdlegal.com

*Trial Counsel for Plaintiff*