IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
FLORIDA

**Broward Division**

**SCOTT THOMAS,**

    **Plaintiff,**

   v.                               CASE NO.: 19-61324-CIV-DIMITROULEAS

                                     JURY TRIAL DEMANDED

**BROWARD COUNTY SHERRIFF'S
OFFICE,**

    **Defendant.**

    _____/

**SECOND AMENDED COMPLAINT**

    **COMES NOW,** Plaintiff Scott Thomas, by and through the undersigned counsel, and hereby files this Complaint against Defendant Broward County Sheriff's Office (Defendant BSO, hereinafter) for violations of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), as amended, 38 U.S.C. §§ 4301-4335.

**PARTIES, JURISDICTION, AND VENUE**

    1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 38 U. S.C. § 4323(b).

    2.    The United States District Court for the Southern District of Florida is a proper venue for this action under 38 U.S.C. §4323(c)(2) because Plaintiff Thomas currently, and at all material times relevant to this Complaint, resides in Palm Beach County, Florida and Defendant maintains its principal place of business in Broward County.

3. Plaintiff Scott Thomas is a former employee of Defendant.

4. Defendant is an employer as defined under USERRA 38 U.S.C. § 4303(4)(A), because it employed, managed, and controlled Plaintiff's daily activities and had authority over his employment opportunities while he was employed by the Defendant.

5. Plaintiff is a United States military veteran who served his country as a Helicopter Pilot in the United States Army from May 2004 until his honorable release in December of 2011.

6. This Court has jurisdiction over Plaintiffs' claims pursuant to 38 U.S.C. § 4323(b)(3).

## FACTS GIVING RISE TO RELIEF

7. Plaintiff was initially hired by BSO as an Air Rescue Helicopter Pilot on November 8, 2018.

8. Plaintiff applied for a position as an Air Rescue Helicopter Pilot for BSO by submitting an application for employment and a resume.

9. Both the application for employment and the resume specifically disclosed to BSO Plaintiff's service in the United States Army as a Pilot.

10. After submitting his application, Plaintiff was interviewed by Brian Miller of BSO.

11. During the interview with Brian Miller, Plaintiff discussed his experience as a military pilot with Mr. Miller. As such, Defendant BSO was clearly aware that Plaintiff had served as a member of the United Stated Military.

12. Also during the interview process, Plaintiff disclosed potential

discrepancies with his log book due to covert flights performed while working for various government agencies post military service to Brian Miller. Mr. Miller was fully advised of potential discrepancies in Plaintiff's flight log book.

13. With full knowledge of potential conflicts, Defendant Broward County Sheriff's Office extended an offer of employment to Plaintiff.

14. Danielle Fuller was not involved in the decision to hire Plaintiff.

15. At the onset of Plaintiff's employment, Danielle Fuller was a Pilot assigned to the same unit as Plaintiff.

16. During orientation each individual pilot discussed his or her background. When discussing his background, Plaintiff disclosed to members of his unit, including Danielle Fuller, that he had served in the military as a Pilot.

17. In early November 2018, Danielle Fuller was appointed to Interim Director of Operations.

18. In early December 2018, Ms. Fuller expressed her anti-military bias against Plaintiff by stating to Plaintiff that military pilots were being brought into BSO to serve in the air rescue division instead of civilian pilots with part 135 experience and she did not believe that selecting military pilots over civilian pilots was fair. She did so with knowledge that Plaintiff did not have part 135 experience and was exempt from the requirement because of his military background.

19. On December 26, 2018, Ms. Fuller again expressed her displeasure with being in the industry for fifteen (15) years and having the same position as military pilots with little or no civilian or part 135 experience. She continued to express her disgust stating that she could not go into the military and be given the same position as someone

who had fifteen (15) years of military flight experience.  She concluded that she knew plenty of people in the industry that were better qualified for Plaintiff's position because they were civilian trained pilots with part 135 experience and would be happy to live in south Florida.

20. On January 16, 2019, Ms. Fuller again voiced her repugnance about military pilots in Plaintiff's presence, and stated they were not qualified for service in her unit.  Plaintiff protested and complained about her unlawful disparaging comments about his military background.  Once again, Ms. Fuller, the interim director of operations, tasked with supervising Plaintiff made anti-military comments about Plaintiff and when he complained Ms. Fuller immediately changed the subject.

21. Plaintiff hereby alleges that Defendant BSO, through the conduct of Interim Director of Operations Fuller (as alleged in paragraphs 18, 19 and 20), engaged in expressed hostility toward Plaintiff because he was a member of the United States Military.

22. On January 17, 2019 during a closed-door meeting with Chief Smith and Pilot Brian McDonald, Plaintiff complained about Ms. Fuller's discrimination on the basis of his military service.  In response, Chief Smith indicated that he would ask Chief Nugent to have a one-on-one conversation with all Pilots within the unit to individually address their concerns.

23. On January 18, 2019 Chief Nugent arrived at BSOFR No. 17 at 3:30 p.m. Instead of Chief Nugent conducting individual meetings with each pilot, she chose to have a discussion in a group setting to allow the pilots to air any grievances they had concerning Ms. Fuller.

24. On January 28, 2019, eleven (11) days after his complaint of discrimination to Chief Smith, Plaintiff was called into a meeting with Chief Nugent, Deputy Jesse Madrigal and Interim Director Fuller. At the start of the meeting Plaintiff was informed by Chief Nugent that he was being terminated for discrepancies in his flight log book. Plaintiff protested stating that the discrepancies could easily be explained, implying that he was being terminated without cause.

25. Plaintiff was treated differently than similarly situated Pilots without military experience. Plaintiff was not given any opportunity to address the perceived discrepancies. Plaintiff is informed and believes that similarly situated civilian pilots

26. Plaintiff is informed and believes that BSO treated Plaintiff differently than similarly situated non-military pilots by refusing to give him an opportunity to correct his flight log or address the concerns raised by Chief Nugent and Interim Director Fuller.

27. Plaintiff explained to both the Chief and Interim Director that the log book which documented the explanation for any discrepancies was being housed in a storage unit in Fredericksburg Virginia and that he could easily provide them with the documentation given a reasonable opportunity to obtain the log book.

28. Instead of affording Plaintiff an opportunity to prove that any discrepancies in his log book tendered to Ms. Fuller were mere oversights that were not critical in any way, Ms. Fuller used two insignificant scrivener's errors to justify Plaintiff's termination.

29. Thereafter, Chief Nugent gave Plaintiff two documents; a termination letter and a resignation letter. Plaintiff was told that he would be better off resigning by

Chief Nugent because if he was fired, he would no longer be able to obtain employment with any other state or local police organizations.

30. Chief Nugent then ordered Plaintiff to sign the resignation letter she had drafted and dated for February 1, 2019.

31. Shocked by the decision to fire Plaintiff because of his complaints of discrimination on the basis of his military service, Plaintiff requested he be allowed to discuss the matter with an attorney.

32. Chief Nugent informed Plaintiff he would be fired if he did so and he would not be able to obtain any work for any other state or local government police organization. Faced with no other option, Plaintiff did as Chief Nugent ordered and signed the separation form indicating he was resigning.

33. By ordering Plaintiff to sign the resignation letter, Defendant BSO constructively terminated Plaintiff's employment and ended the benefit of employment.

34. On January 31, 2019 prior to his resignation taking effect, Plaintiff withdrew his resignation. Simultaneously, Plaintiff filed a complaint with the County Attorney and the Broward County Sheriff detailing the unlawful discrimination in violation of USERRA that he was subjected to by Interim Director of Operations Fuller.

35. Due to the close temporal proximity in time between the termination of Plaintiff and his complaint of unlawful discrimination eleven (11) days prior to his termination, Plaintiff believes he was unlawfully terminated in violation of USERRA.

36. Plaintiff further believes the reasons given by Defendant for his termination is not legitimate and is not the real reason for his termination.

37. Plaintiff is informed, believes and hereby alleges that the reason proffered by

Defendant for his termination was a pretext. Plaintiff further alleges that Defendant BSO, through the conduct of Interim Director Fuller, took into account, considered, and/or conditioned its' decision to constructively terminate Plaintiff due to his military status and service.

38.     Shortly after his termination, the FAA confirmed that Plaintiff's logbook was in fact accurate as corroborated by the Federal Bureau of Investigation (FBI).

39.     Plaintiff alleges that Defendant did not follow its' own policies and procedures in disciplining Plaintiff by terminating his employment without providing him any due process to establish that the allegations raised by Interim Director Fuller were without merit.

40.     Plaintiff submits that other non-military pilot employees of Defendant who had minor errors in their logbook were not constructively terminated.

41.     Plaintiff submits that other non-military pilot employees were given an opportunity to correct minor errors in their logbooks.

42.     Plaintiff has suffered and continues to suffer damages as a result of the unlawful discrimination and retaliation he was subjected to by Defendant BSO.

43.     Plaintiffs has retained the undersigned law firm to prosecute this action and have agreed to pay said law firm a reasonable fee for its services.

44.     All conditions precedent to filing this action have been satisfied or waived.

## COUNT I
**(Violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), as amended, 38 U.S.C. §§ 4301 *et seq.*; Discrimination pursuant to 38 U.S.C. § 4311(a))**

45.     Plaintiff Thomas hereby realleges and incorporates Paragraphs 1-44 as if set forth in

full herein.

46. At all times relevant herein, Plaintiff Thomas was an employee of Defendant.

47. At all times relevant herein, Plaintiff Thomas had performed services for the uniformed services as defined by USERRA.

48. United States Code 38 Section 4311(a) states:

> "A person who is a member of, applies to be a member of, performs, **has performed**, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." (Emphasis added).

49. Defendant BSO's conduct as described in paragraphs 11 through 44 above, violated 38 U.S.C. § 4311(a). Defendant BSO violated 38 U.S.C. § 4311(a) when, through the conduct of its agents and employees, it intentionally discriminated against Plaintiff Thomas because Plaintiff had performed in the uniformed services as defined by USERRA.

50. Specifically, Defendant BSO violated 38 U.S.C. § 4311(a) by subjected Plaintiff to adverse employment actions, including but not limited to, denying Plaintiff Thomas the benefit of employment because Plaintiff Thomas' had performed services for the uniformed services as defined by USERRA.

51. Plaintiff Thomas' status as an individual who had performed services for the uniformed services as defined by USERRA was a motivating factor in Defendant BSO's decision to deny Plaintiff of the benefit of employment by constructively discharging him.

52. Defendant BSO would not have taken the same adverse employment actions against Plaintiff Thomas but for his performed services for the uniformed services as defined by

USERRA.

53. The acts and omissions committed by Defendant BSO, by and through its agents and employees, which violated Plaintiff Thomas' rights under USERRA were willful.

54. As a direct and proximate result of the actions and omissions committed by Defendant, by and through its agents and employees, Plaintiff Thomas has suffered and will continue to suffer lost wages, benefits and entitlements.

55. WHEREFORE, Plaintiff Thomas demands judgment against Defendant for damages including but not limited to, lost back pay, lost benefits, lost front pay, and other lost economic damages; an amount equal to lost wages and benefits as liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C); equitable relief in the form of reinstatement and the use of the Court's full equity powers to vindicate fully Plaintiff Thomas' rights or benefits pursuant to 38 U.S.C. § 4323(e); reasonable attorney's fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2); pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

## COUNT II
**(Violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), as amended, 38 U.S.C. §§ 4301 *et seq.*; Discrimination pursuant to 38 U.S.C. § 4311(b))**

56. Plaintiff Thomas hereby realleges and incorporates Paragraphs 1-44 as if set forth in full herein.

57. At all times relevant herein, Plaintiff Thomas was an employee of Defendant.

58. At all times relevant herein, Plaintiff Thomas had performed services for the uniformed services as defined by USERRA.

59. United States Code 38 Section 4311(b) states:

> "An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed service."

60. Defendant BSO, by and through its agents and employees, as described in paragraphs 1 through 44 above, violated 38 U.S.C. § 4311(b) when it terminated Plaintiff Thomas' employment for complaining about Defendant's unlawful discrimination in violation of 38 U.S.C. §4311(a) to Interim Supervisor Danielle Fuller, Chief Smith, Chief Nugent, the Broward County Sheriff and the County Attorneys' Office.

61. Plaintiff Thomas' complaints about Defendant BSO's violation of 38 U.S.C. § 4311(a) was a motivating factor in Defendant BSO subjecting Plaintiff to adverse employment actions, including but not limited to, terminating of Plaintiff Thomas' employment.

62. Defendant BSO would not have taken the same adverse employment actions against Plaintiff Thomas but for his action to enforce a protection afforded under 38 U.S.C. § 4311(a).

63. The acts and omissions committed by Defendant BSO, by and through its agents and employees, which violated Plaintiff Thomas' rights under 38 U.S.C. § 4311(b) were willful.

64. As a direct and proximate result of the actions and omissions committed by Defendant, by and through its agents and employees, Plaintiff Thomas has suffered and will continue to suffer lost wages, benefits and entitlements.

65. WHEREFORE, Plaintiff Thomas demands judgment against Defendant for damages including but not limited to, lost back pay, lost benefits, lost front pay, and other lost economic damages; an amount equal to lost wages and benefits as liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C); equitable relief in the form of reinstatement and the use of the Court's full equity powers to vindicate fully Plaintiff Thomas' rights or benefits pursuant to 38 U.S.C. § 4323(e); reasonable attorney's fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2); pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury with respect to all issues, counts, claims, controversies and damages so triable.

Dated this 27th day of August 2019.

Respectfully submitted,
OBeidy and Associates, P.A.

s/ A. Andrew OBeidy
A. Andrew OBeidy
Florida Bar No. 910341
2755 East Oakland Park Blvd, Suite 225
Fort Lauderdale, Florida 33306
(305) 892-5454
andrew@obdlegal.com

*Trial Counsel for Plaintiff*