**A. ANDREW OBEIDY, ESQ. (FBN 910341)**
**OBEIDY & ASSOCIATES, P. A.**
2755 East Oakland Park Blvd., Suite 225
Fort Lauderdale, Florida 33306
Telephone:     (305) 892-5454
Facsimile:     (954) 206-6955
Andrew@obdlegal.com
**Attorney for Plaintiff Scott Thomas**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **SCOTT THOMAS,** | **CASE NO: 19-61324-CIV-DIMITROULEAS** |
| Plaintiff | |
| vs. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| **BROWARD COUNTY SHERIFF'S OFFICE,** | |
| Defendant. | |

## I.     INTRODUCTION

1. On May 28, 2019 Plaintiff Scott Thomas filed a Complaint with one cause of action naming the Broward County Sheriff's Office ("BSO" hereafter) as a Defendant.

2. On July 11, 2019, Defendant BSO filed a Motion to Dismiss Plaintiff's Complaint.

3.  On July 24, 2019, Plaintiff filed a two-count First Amended Complaint.

4. On August 7, 2019, Defendant BSO filed a Motion to Dismiss Plaintiff's First Amended Complaint.

5.    On August 20, Plaintiff filed a Motion for Leave to File a Second Amended Complaint.  On the same day, the Court entered an Order granting Plaintiff's Motion and denying Defendant's Motion to Dismiss as moot.

6.    On August 27, 2019, Plaintiff filed a two-count Second Amended Complaint.

7.    On September 10, 2019, Defendant BSO filed its Motion to Dismiss Plaintiff's Second Amended Complaint.

## II.    ARGUMENT

### A.    MOTION TO DISMISS STANDARD

Under the Federal Rules of Civil Procedure, a Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant may move to dismiss a Complaint for "failure to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a defendant's motion to dismiss under Rule 12(b)(6), Plaintiff's Second Amended Complaint must contain enough factual allegations to "raise a right to relief above the speculative level."

The court must decide whether the facts alleged, if true, would entitle Plaintiff to some form of legal remedy.  This pleading standard "demands more than an unadorned, the defendant-unlawfully- harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving they will 12 (b)(6) motion, the Court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well pleaded factual allegations as true; and (3) determined whether the plaintiff can improve any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.* (9th Cir 1996) 80 F3d 336, 337-338.

## B.   PLAINITFF HAS ADEQUATELY STATED A CLAIM FOR DISCRIMINATION UNDER 38 U.S.C. 4311(a).

Under the USERRA, a person who is a member of, or who has performed in, a uniformed service shall not be denied "initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership" or performance of service. 38 U.S.C. § 4311(a).  An employer, therefore, violates the USERRA where the employee's membership or service in the uniformed services is a **"motivating factor"** in the employer's failure to reemploy [or continue to employ] the individual. *See id*. § 4311(c)(1). *Emphasis Added*

To establish a *prima facie* case of discrimination under the USERRA, the Plaintiff must demonstrate by a preponderance of the evidence that his military membership or service was a motivating factor in the employer's decision [to terminate]. *See Coffman v. Chugach Support Servs., Inc.,* 411 F.3d 1231, 1238 (11th Cir.2005). A motivating factor does not necessarily have to be the sole cause for the employer's decision but is defined as one of the factors that a truthful employer would list as its reasons for its decision. *Id*.

A court can infer a discriminatory motivation from a variety of considerations, such as: "(1) the temporal proximity between the Plaintiff's military activity and the adverse employment action; (2) inconsistencies between the proffered reason for the employer's decision and other actions of the employer; (3) an employer's expressed hostility toward members of the protected class combined with its knowledge of the plaintiff's military activity; and (4) disparate treatment of similarly situated employees."  *Id*.

Here, Plaintiff has met its burden of filing a short plain statement alleging the requisite elements of USSERA Discrimination sufficient to make a *prima facie* claim that should survive Defendant's Motion to Dismiss. The well plead elements are as follows:

1) In Paragraph 5 of the Second Amended Complaint, Plaintiff alleges he performed Uniformed Service by stating, "Plaintiff is a United States military veteran who served his country as a Helicopter Pilot in the United States Army from May 2004 until his honorable release in December of 2011."

2) In Paragraph 11, Plaintiff alleges Defendant BSO knew he was a veteran by stating, "During the interview with Brian Miller, Plaintiff discussed his experience as a military pilot with Mr. Miller.  As such, Defendant BSO was clearly aware that Plaintiff had served as a member of the United Stated Military."

3) In Paragraph 24, Plaintiff alleges he was denied retention in employment by stating, "On January 28, 2019, eleven (11) days after his complaint of discrimination to Chief Smith, Plaintiff was called into a meeting with Chief Nugent, Deputy Jesse Madrigal and Interim Director Fuller.  At the start of the meeting Plaintiff was informed by Chief Nugent that he was being terminated…"

4) In Paragraph 51, Plaintiff alleges that his status as an Army Veteran was a motivating factor in Defendant BSO's decision to terminate Plaintiff.

In his Second Amended Complaint, Plaintiff has pled facts consistent with the *Coffman* decision such that if true, the Court can easily infer a discriminatory motive leading to Plaintiff's termination.  Those facts include:

i) **Facts which demonstrate inconsistencies between the proffered reason for the employer's decision and other actions of the employer**

Defendant claims in its Motion to Dismiss that Plaintiff admits he was terminated for a legitimate business reason, namely that he had inconsistencies in his flight logbook.  Defendant further argues that these inconsistencies in the log book were sufficient to justify Plaintiff's termination and as such, there can be no discrimination.

Defendant's Motion to Dismiss has a several glaring omissions.  The first omission is that Defendant does not address the allegation that Plaintiff disclosed potential

discrepancies/scriveners' errors in his logbook to Interviewer Brian Miller during the hiring process.  See Paragraph 12 of Plaintiff's Second Amended Complaint.  Further, Plaintiff alleges that Danielle Fuller, and not Brian Miller, was the catalyst which lead to the decision to terminate Plaintiff.

 Defendant claims in its Motion because it initially chose to hire Plaintiff, "it is implausible that BSO would then turn around and then terminate Plaintiff a few months later based on his veteran status."  Defendant would have the Court believe that Ms. Fuller was incapable of discriminating against Plaintiff on the basis of his military status simply because Brian Miller decided to hire Plaintiff.  This argument strains logic.

Defendant does not argue in their motion that at the time Plaintiff was hired Ms. Fuller was in a supervisory role.  In fact, Ms. Fuller had zero authority over the decision to hire Plaintiff.  See Paragraph 13 of Plaintiff's Second Amended Complaint.  However, during Plaintiff's tenure, Plaintiff alleges Ms. Fuller was promoted to the position of "Interim Director of Operations".  See Paragraph 17 of Plaintiff's Second Amended Complaint.  Once in power, Interim Director Fuller is alleged to have participated in and assisted with Plaintiff's termination. See Paragraphs 24, 27 and 28 of Plaintiff's Second Amended Complaint.  If Ms. Fuller did not have any authority with regard to Plaintiff's employment status, there is no reason that she would have been present at the time of his termination.  Clearly, the Director of Operations has firing authority and, in this circumstance, she chose to exercise said authority.

Defendant BSO's claim that it fired Plaintiff for a legitimate business reason, the discrepancies/scriveners' errors in his logbook, is replete with inconsistencies.  If Plaintiff's logbook errors were sufficient enough to warrant his termination, then BSO would never have hired him in the first place given their awareness of the errors.  Because Plaintiff has alleged that

he disclosed the errors during the interview process to Brian Miller, the Court must take this fact as true.  Hence, the reason relied upon by BSO for Plaintiff's termination is inconsistent.  This inconsistency allows for an inference that Plaintiff's military status was a motiving factor in the decision to terminate Plaintiff.

Even assuming arguendo, that Defendant BSO's Danielle Fuller was involved in the decision to hire Plaintiff, which she was not, "The mere fact that same decision maker both hired and fired employee who was Air Force reservist did not preclude employee's USERRA discrimination action alleging that termination was at least partly motivated by her military status. 38 U.S.C.A. § 4311.See *Gillie-Harp v. Cardinal Health, Inc*. 249 F. Supp. 2d 1113, 1120.

**ii)    BSO expressed hostility toward Plaintiff because of his protected status combined with BSO's knowledge of Plaintiff's military activity**

Plaintiff alleges throughout his Second Amended Complaint that Interim. Director of Operations Danielle Fuller made several hostile anti-military comments.  Specifically, in Paragraph 18, Plaintiff alleges, "Ms. Fuller expressed her anti-military bias against Plaintiff by stating to Plaintiff that military pilots were being brought into BSO to serve in the air rescue division instead of civilian pilots with part 135 experience and she did not believe that selecting military pilots over civilian pilots was fair."

In Paragraph 19 of his Second Amended Complaint, Plaintiff alleges, "On December 26, 2018, Ms. Fuller again expressed her displeasure with being in the industry for fifteen (15) years and having the same position as military pilots with little or no civilian or part 135 experience. She continued to express her disgust stating that she could not go into the military and be given the same position as someone who had fifteen (15) years of military flight experience.  She concluded that she knew plenty of people in the industry that were better qualified for Plaintiff's position because they were civilian trained pilots with part 135 experience and would be happy

to live in south Florida."

In Paragraph 20 of his Second Amended Complaint, Plaintiff alleges, "On January 16, 2019, Ms. Fuller again voiced her repugnance about military pilots in Plaintiff's presence, and stated they were not qualified for service in her unit.  Plaintiff protested and complained about her unlawful disparaging comments about his military background."

Paragraphs 18, 19 and 20 each demonstrate examples of hostility towards Plaintiff based on uniform service in the military.  Plaintiff alleges that Interim Director Fuller was aware of Plaintiff's military status at the time she made these hostile statements.  See Paragraph 16 of Plaintiff's Second Amended Complaint.  The hostile statements made by Interim Director Fuller, coupled with her knowledge of Plaintiff's service, allow the Court to infer that Plaintiff's protected status was a motivating factor in the decision to terminate Plaintiff.

Defendant claims that Interim Director Fuller's hostile statements, "involve her assessment that civilian trained pilots and pilots with part 135 experience were better qualified for the helicopter pilot position in air rescue."  Defendant tries to characterize these statements as benign, that concern "certain training and experience" and as such "do not violate USERRA."  Defendant's motion does not address the reality of Plaintiff's allegations.  Plaintiff does not allege that Interim Director Fuller was merely making a factual comparison of the differences in military and civilian pilot licensing standards.  Rather, Plaintiff clearly alleges, "Ms. Fuller expressed her anti-military bias…" because "…she did not believe that selecting military pilots over civilian pilots was fair." And, Plaintiff alleges Fuller expressed, "displeasure with being in the industry for 15 years and having the same position as military pilots."  And, Plaintiff alleges Fuller, "voiced her repugnance about military pilots…" stating, "[military pilots] were not qualified for service in her unit."

The statements made by Ms. Fuller as alleged in Plaintiff's Second Amended Complaint, do not demonstrate a non-bias recitation of the differential in the standards.  Rather, if true, which the Court must assume in the context of a Motion to Dismiss, the statements clearly show hostility toward Plaintiff because of his loyal and dedicated long-standing service in the Armed Forces of the United States of America.

### iii)    Disparate treatment of similarly situated employees

In Plaintiff's Second Amended Complaint, Plaintiff alleges he was treated differently than other BSO employees because he was not given any opportunity to address the discrepancies/scriveners' errors in his log book, which BSO used to justify Plaintiff's termination. In Paragraph 25 of his Second Amended Complaint, Plaintiff alleges, "Plaintiff was treated differently than similarly situated Pilots without military experience.  Plaintiff was not given any opportunity to address the perceived discrepancies."   In Paragraph 26 of his Second Amended Complaint, Plaintiff alleges, "Plaintiff is informed and believes that BSO treated Plaintiff differently than similarly situated non-military pilots by refusing to give him an opportunity to correct his flight log or address the concerns raised by Chief Nugent and Interim Director Fuller." Once again, this allegation, if true, gives rise to an inference that Plaintiff's military status was a motivating factor in the decision to terminate his employment.

Defendant argues that Plaintiff merely makes conclusory and unsupported allegations of his belief that he was treated differently than similarly situated non-military pilots.  This claim is far from factually correct and does not address the allegation brought in Paragraph 26 of Plaintiff's Second Amended Complaint.  In Paragraph 26, Plaintiff does not merely allege that he was treated differently than similarly situated pilots with civilian training.  Rather, Plaintiff describes how he believes he was treated differently.  Plaintiff specifically states that BSO refused

"to give him an opportunity to correct his flight log book or address the concerns raised by Chief Nugent or Interim Director Fuller."

The decision to sandbag Plaintiff with a pre-drafted resignation letter and a pre-drafted termination letter instead of informing Plaintiff that BSO was concerned about discrepancies in his log book show that a decision was made to severe Plaintiff from BSO prior to the meeting which resulted in his termination. Plaintiff alleges that the decision to severe his employment before being afforded the opportunity to correct the record violated BSO's longstanding policy of due process afforded to all BSO employees regardless of whether they hold probationary status, part-time status or full-time status. Plaintiff's Second Amended Complaint clearly alleges the disparate treatment that Plaintiff was subjected to by Defendant BSO.

### iv) The temporal proximity between the plaintiff's military activity and the adverse employment action is irrelevant

Defendant BSO correctly argues that it would be difficult for the Court to infer that the temporal proximity in time between Plaintiff's military service and his termination from BSO gives rise to an inference that Plaintiff's military service was a motivating factor in the decision to terminate Plaintiff. Defendant BSO however, fails to state that Plaintiff does not make any such allegation in his Second Amended Complaint.

### v) Defendant BSO's other arguments raised in their Motion to Dismiss to support the claim that Plaintiff has failed to state a claim upon which relief may be granted are without merit

One of the creative arguments that Defendant advances in its Motion to Dismiss is that Plaintiff's allegation that he could have easily addressed the discrepancies/scriveners' errors was impossible because Plaintiff's corrected logbook was located in Virginia. Apparently, BSO does not believe that the internet allows for transmission of documents almost instantaneously, or that Plaintiff could have had the logbook overnighted using a common currier service, or that a pilot is able to obtain records from a location less than one thousand miles away by flying there and back.

Despite the silliness of this argument, a Motion to Dismiss is not the correct mechanism for consideration of this point of contention. This argument is not an attack on whether or not Plaintiff has pled a prima facie case, but rather explains that the legitimate business reason for the termination was valid. An argument bolstering the legitimate business reason for termination should be considered at the Summary Judgment stage and not during the initial pleadings.

Defendant also argues that Plaintiff admits "that his failure to demonstrate his qualifications to be a pilot as required by Federal Regulations led to his termination." Plaintiff makes no such admission. If Defendant really believed that Plaintiff was not qualified to be a pilot because of his military training, they never would have hired him in the first place to fly helicopters. Defendant BSO would also not have hired other military trained pilots prior to Interim Director Fuller's tenure if they thought that military pilots were not qualified to fly for BSO. BSO initially hired both Plaintiff and other military pilots because military pilots are specifically exempt from Part 135 requirements. Defendant BSO's failure to recognize a military pilot's exemption from Part 135 requirements is direct evidence of discrimination on the basis of military service. BSO initially understood that this exemption was valid, but under Interim Director Fuller, the exemption became an issue because she did not think that it was fair for a military trained pilot to be placed in a position that took her 15 years to obtain.

Defendant goes on to argue that Plaintiff failed to abide by FAA regulations because Plaintiff did not accurately maintain a record of training in his log book. Defendant BSO failed to inquire as to why this happened or to give Plaintiff an opportunity to explain. Had Defendant BSO treated Plaintiff the same way as it does non-military personnel and given him an opportunity to address the allegation of wrongdoing, it would have learned that the discrepancy was largely a result of the covert nature of several previous flights. Importantly, BSO would have also learned that both the FAA and the FBI had cleared Plaintiff of any wrongdoing as alleged in Paragraph 38 of Plaintiff's Second Amended Complaint, despite Defendant BSO's invalid assertion to the contrary.

**3.    RETALIATION**

In order to bring a claim for retaliation under section 4311(b)(1),(4) of the USERRA, a Plaintiff must show that (1) he took an action protected by USERRA; and (2) his protected action was a substantial or motivating factor in the adverse employment action taken against him.  See *Jones v. HHS*, 703 Fed. Appx. 977, 980 (Fed. Cir. 2017).  The employer may avoid liability by proving the adverse action would have been taken in the absence of the protected activity.  *Ward v. UPS* 580 Fed. Appx. 735, 739.

The appropriate framework for claims under USERRA is not the McDonnel Douglas Standard. See *Gagnon v. Sprint Corp.*, 284 F.3d 839, 854 (8th Cir.2002); *Leisek*, 278 F.3d at 899 n. 2; *Sheehan v. Department of Navy*, 240 F.3d 1009, 1014 (Fed.Cir.2001).  Rather, the correct standard is that articulated in *NLRB v. Transportation Management Corp*. See *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983).  Thus, a plaintiff must show by a preponderance of the evidence that his or her protected status was a substantial or motivating factor in the adverse employment action. "The burden of persuasion then shifts to the defendant to prove by a preponderance of the evidence that it would have made the same decision without regard to the plaintiff's protected status." *Id*. at 699.

In *Sheehan*, the court reasoned that *McDonnell Douglas* is inconsistent with the *Transportation Management* framework because in *McDonnell Douglas* only the burden of production shifts to the defendant while the burden of persuasion always remains with the plaintiff." See *Gillie-Harp Id*. at 1119.

In the instant case, Defendant advances two arguments in an effort to defeat Plaintiff's retaliation claim. The first is that Plaintiff's complaint of a Violation of Section 4311(b)(1),(4) does not preceed the adverse employment action taken against him.

Specifically, Defendant argues that they intended to terminate Plaintiff and that they provided Plaintiff with notice of their intent to terminate Plaintiff on January 28, 2019. The notice however, indicated that the termination would take effect on February 1, 2019. Defendant claims that Plaintiff's first complaint to Chief Smith and Pilot Brian McDonald on January 17, 2019, "could not have been a complaint that Ms. Fuller had discriminated in violation of Section 4311(a) where there was no "denial of initial employment, reemployment, retention in employment, promotion, or any other benefit of employment" by Ms. Fuller on the basis of military membership or service." This claim is false. Plaintiff specifically alleges in Paragraph 22 of his Second Amended Complaint that he met with Chief Smith and Pilot Brian McDonald and complained about Ms. Fuller's discrimination on the basis of his military service. While it is true that Plaintiff did not yet know he was being fired at the time of this meeting, it is also true that Plaintiff was complaining about Ms. Fuller's discriminatory statements and hostility demonstrated towards Plaintiff based on his military service. Ms. Fuller's direct statements affected the terms of Plaintiff's employment such that he was forced to complain about the statements, which he characterized the discriminatory statements are a violation of the USERRA to Chief Smith. Eleven (11) days following this complaint of discrimination by Director Fuller, Plaintiff was terminated.

After receiving Defendant's Notice of Intent to terminate his employment, but prior to the date of his actual termination, Plaintiff made a second complaint to the City Attorney and to the Fire Chief and to the Deputy Chief and to the Division Chief of EMS. In this complaint, Plaintiff withdrew his resignation. As such, there is no disputing that Plaintiff was an employee of BSO at

the time that he made this complaint. Regardless of the fact that Plaintiff withdrew his resignation, the fact remains that at the time that Plaintiff made a complaint to BSO Senior Management and to the City Attorney, Plaintiff was a BSO employee. It is also a fact that Plaintiff was no longer employed after he withdrew his resignation effective February 1, 2019. As such, the only logical conclusion is that he was terminated, and that said termination took place after his January 17, 2019 complaint and his January 31, 2019 complaint.

The temporal proximity in time between Plaintiff's complaints and his termination is at most, eleven (11) days and at best one (1) day. There is no disputing that the Court can infer a nexus between the Plaintiff's complaints and the adverse employment action taken by BSO. See *Ward v. UPS* 580 Fed. Appx. 735, 739.

The second argument that can be inferred from Defendant's Motion to Dismiss regarding Plaintiff's failure to state a retaliation claim is that Defendant had a legitimate business reason for terminating Plaintiff. The burden of persuasion must shift to the defendant to prove by a preponderance of the evidence that it would have terminated Plaintiff regardless of his complaints. However, this argument must be advanced at the summary judgment stage because the Court is obligated to take the allegations of the complaint of discrimination, the adverse employment action and the nexus as true in deciding a Motion to Dismiss. The Motion to Dismiss is not the correct procedural mechanism to advance the argument of a legitimate business reason for terminating Plaintiff.

## CONCLUSION

Defendants bear the burden of bring forth and proving their argument in their motion to dismiss. Defendant has failed to bring an adequate argument as to why this claim should be dismissed. For the aforementioned reasons, Plaintiff respectfully requests Defendant BSO's

Motion to Dismiss Plaintiff's Complaint be denied, or in the alternative, Plaintiff requests leave to amend said cause of action if the Court finds Plaintiff has not sufficiently plead this cause of action.

Respectfully submitted on this 24th day of September 2019.

By:/s/ *Andrew Obeidy*
    Andrew Obeidy, Esq.
    **Attorney for Scott Thomas**

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this 24th day of September 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:*/s/ Andrew Obeidy*
Andrew Obeidy, Esq.