UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61324-CIV-DIMITROULEAS

SCOTT THOMAS,

    Plaintiff,

vs.

BROWARD COUNTY SHERRIFF'S
OFFICE,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

THIS CAUSE is before the Court on Defendant's Motion to Dismiss Second Amended Complaint [DE 17], filed herein on September 10, 2019. The Court has carefully considered the Motion [DE 17], the Response [DE 18], the Reply [DE 19], and is otherwise fully advised in the premises. For the reasons stated herein, the Court will deny the Motion.

**I. Background**

Plaintiff Scott Thomas ("Plaintiff" or "Thomas") commenced this action on May 28, 2019 against Defendant Broward County Sheriff's Office ("Defendant" or "BSO"), alleging discrimination and retaliation in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), as amended, 38 U.S.C. §§ 4301-4335. *See* [DE 1]. The Second Amended Complaint, the operative pleading, was filed on August 27, 2019. *See* [DE 16]. Defendant filed the instant Motion to Dismiss on September 10, 2019. *See* [DE 17].

According to the factual allegations of the Second Amended Complaint, which the Court considers true for the purposes of this Motion:

Plaintiff is a United States military veteran who served his country as a Helicopter Pilot in the United States Army from May 2004 until his honorable release in December of 2011. [DE 16] at ¶ 5. Plaintiff was employed by Defendant as an Air Rescue Helicopter Pilot from his hire on November 8, 2018 until his employment was terminated on or about January 28, 2019. ¶¶ 7, 24.

Plaintiff applied for a position as an Air Rescue Helicopter Pilot for BSO by submitting an application for employment and a resume. ¶ 8. Both the application for employment and the resume specifically disclosed to BSO Plaintiff's service in the United States Army as a Pilot. ¶ 9. After submitting his application, Plaintiff was interviewed by Brian Miller of BSO. ¶ 10. During the interview with Brian Miller, Plaintiff discussed his experience as a military pilot with Mr. Miller. ¶ 11. Also during the interview process, Plaintiff disclosed potential discrepancies with his log book due to covert flights performed while working for various government agencies post military service to Brian Miller. ¶ 12. Mr. Miller was fully advised of potential discrepancies in Plaintiff's flight log book. ¶ 12. With full knowledge of potential conflicts, Defendant BSO extended an offer of employment to Plaintiff. ¶ 13.

Danielle Fuller was not involved in the decision to hire Plaintiff. ¶ 14. At the onset of Plaintiff's employment, Danielle Fuller was a Pilot assigned to the same unit as Plaintiff. ¶ 15. During orientation each individual pilot discussed his or her background. ¶ 16. When discussing his background, Plaintiff disclosed to members of his unit, including Danielle Fuller, that he had served in the military as a Pilot. ¶ 16.

In early November 2018, Danielle Fuller was appointed to Interim Director of Operations. ¶ 17.  As such, Ms. Fuller became Plaintiff's supervisor. ¶ 20.

In early December 2018, Ms. Fuller expressed her anti-military bias against Plaintiff by stating to Plaintiff that military pilots were being brought into BSO to serve in the air rescue division instead of civilian pilots with part 135 experience and she did not believe that selecting military pilots over civilian pilots was fair. ¶ 18.  She did so with knowledge that Plaintiff did not have part 135 experience and was exempt from the requirement because of his military background. ¶ 18.

On December 26, 2018, Ms. Fuller again expressed her displeasure with being in the industry for fifteen (15) years and having the same position as military pilots with little or no civilian or part 135 experience. ¶ 19.  She continued to express her disgust stating that she could not go into the military and be given the same position as someone who had fifteen (15) years of military flight experience. ¶ 19.  She concluded that she knew plenty of people in the industry that were better qualified for Plaintiff's position because they were civilian trained pilots with part 135 experience and would be happy to live in South Florida. ¶ 19.

On January 16, 2019, Ms. Fuller again voiced her repugnance about military pilots in Plaintiff's presence, and stated they were not qualified for service in her unit. ¶ 20.  Plaintiff protested and complained about her unlawful disparaging comments about his military background. ¶ 20. Ms. Fuller immediately changed the subject. ¶ 20.

On January 17, 2019 during a closed-door meeting with Chief Smith and Pilot Brian McDonald, Plaintiff complained about Ms. Fuller's discrimination on the basis of his military service. ¶ 22.  In response, Chief Smith indicated that he would ask Chief Nugent to have a one-

on-one conversation with all Pilots within the unit to individually address their concerns. ¶ 22. The following day, January 18, 2019, Chief Nugent arrived at BSOFR No. 17 at 3:30 p.m. ¶ 23. Instead of Chief Nugent conducting individual meetings with each pilot, she chose to have a discussion in a group setting to allow the pilots to air any grievances they had concerning Ms. Fuller. ¶ 23.

On January 28, 2019, eleven (11) days after his complaint of discrimination to Chief Smith, Plaintiff was called into a meeting with Chief Nugent, Deputy Jesse Madrigal and Interim Director Fuller. ¶ 24. At the start of the meeting Plaintiff was informed by Chief Nugent that he was being terminated for discrepancies in his flight log book. ¶ 24. Plaintiff protested, stating that the discrepancies could easily be explained, implying that he was being terminated without cause. ¶ 24. Plaintiff explained to both Chief Nugent and Fuller that the log book which documented the explanation for any discrepancies was being housed in a storage unit in Fredericksburg, Virginia and that he could easily provide them with the documentation given a reasonable opportunity to obtain the log book. ¶ 27. Instead of affording Plaintiff an opportunity to prove that any discrepancies in his log book tendered to Ms. Fuller were mere oversights that were not critical in any way, Fuller used two insignificant scrivener's errors to justify Plaintiff's termination. ¶ 28.

Plaintiff was treated differently than similarly situated Pilots without military experience. ¶ 25. Defendant did not follow its' own policies and procedures in disciplining Plaintiff by terminating his employment without providing him any due process to establish that the allegations raised by Interim Director Fuller were without merit. ¶ 39. Plaintiff was not given any opportunity to address the perceived discrepancies. ¶ 25. BSO treated Plaintiff differently than similarly situated non-military pilots by refusing to give him an opportunity to correct his

flight log or address the concerns raised by Chief Nugent and Interim Director Fuller. ¶ 26. Other non-military pilot employees of Defendant who had minor errors in their logbook were not constructively terminated. ¶ 40. Other non-military pilot employees were given an opportunity to correct minor errors in their logbooks. ¶ 41.

Thereafter, Chief Nugent gave Plaintiff two documents; a termination letter and a resignation letter. ¶ 29. Chief Nugent told Plaintiff that he would be better off resigning because if he was fired, he would no longer be able to obtain employment with any other state or local police organizations. ¶ 29. Chief Nugent then ordered Plaintiff to sign the resignation letter she had drafted and dated for February 1, 2019. ¶ 30.

Shocked by the decision to fire Plaintiff because of his complaints of discrimination on the basis of his military service, Plaintiff requested he be allowed to discuss the matter with an attorney. ¶ 31. Chief Nugent informed Plaintiff he would be fired if he did so and he would not be able to obtain any work for any other state or local government police organization. ¶ 32. Faced with no other option, Plaintiff did as Chief Nugent ordered and signed the separation form indicating he was resigning. ¶ 32.

On January 31, 2019, prior to his resignation taking effect, Plaintiff withdrew his resignation. ¶ 34. Simultaneously, Plaintiff filed a complaint with the County Attorney and the Broward County Sheriff detailing the unlawful discrimination in violation of USERRA that he was subjected to by Interim Director of Operations Fuller. ¶ 34.

Shortly after his termination, the FAA confirmed that Plaintiff's log book was in fact accurate as corroborated by the Federal Bureau of Investigation (FBI). ¶ 38.

Plaintiff has suffered and continues to suffer damages as a result of the unlawful discrimination and retaliation he was subjected to by Defendant BSO. These damages include but not are not limited to, lost back pay, lost benefits, lost front pay, and other lost economic damages; an amount equal to lost wages and benefits as liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C); equitable relief in the form of reinstatement and the use of the Court's full equity powers to vindicate fully Plaintiff rights or benefits pursuant to 38 U.S.C. § 4323(e); reasonable attorney's fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2); pre-judgment and post-judgment interest. ¶¶ 55, 65.

Based on the foregoing, Plaintiff alleges the following claims in his Second Amended Complaint:  Count I – Discrimination in Violation of USERRA, 38 U.S.C. § 4311(a); and Count II – Retaliation in Violation of USERRA, 38 U.S.C. § 4311(b).

Defendant moves to dismiss the Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6). [DE 17].

**II. Standard of Review**

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550

U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

"A court's review on a motion to dismiss is 'limited to the four corners of the complaint.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (*quoting St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  However, "[a] court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims," *id.* (*citing Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)).

### III.    Discussion

Defendant moves to dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6).  In its motion, Defendant argues that Counts I and II of the Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.  The Court will address each count in turn.

*Count I – Discrimination in violation of USERRA*

In Count I, Plaintiff alleges that Defendant discriminated against him in violation of USERRA, 38 U.S.C. § 4311(a), which makes it unlawful for an employer to discriminate against an employee based on military service, as follows:

> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a). For an employee to make a *prima facie* case of USERRA discrimination, he must allege facts to show that his protected status was a "motivating factor" in the employment decision at issue. *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005). As the Eleventh Circuit explained in *Coffman*:

> Section 4311 clearly mandates proof of discriminatory motive. *See Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001); *Brandsasse v. City of Suffolk, Va.*, 72 F.Supp.2d 608, 616–17 (E.D. Va. 1999). The standard of proof is the so-called "but for" test. *Sheehan*, 240 F.3d at 1013.
>
> In order to establish his prima facie case, Coffman must show by a preponderance of the evidence that his protected status was a motivating factor in Chugach's decision not to hire him. *Brandsasse*, 72 F.Supp.2d at 617. A motivating factor does not mean that it had to be the sole cause of the employment action. Instead, "it is one of the factors that 'a truthful employer would list if asked for the reasons for its decision.' " *Id.* (citation omitted); *see also Smith v. School Bd. of Polk County, Fla.*, 205 F.Supp.2d 1308, 1314 (M.D. Fla.2002). "Indeed, [m]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Brandsasse*, 72 F.Supp.2d at 617 (citation omitted); see also Smith, 205 F.Supp.2d at 1314–15. Circumstantial evidence plays a critical part in these cases, "for discrimination is seldom open or notorious." *Sheehan*, 240 F.3d at 1014. The court can infer discriminatory motivation under the USERRA from a variety of considerations, such as:
>
> > proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered

>    reason and other actions of the employer, an employer's expressed
>    hostility towards members protected by the statute together with
>    knowledge of the employee's military activity, and disparate
>    treatment of certain employees compared to other employees with
>    similar work records or offenses.

*Id.*

*Coffman.*, 411 F.3d at 1238.

Plaintiff's Second Amended Complaint sets forth sufficient factual allegations to allow the inference of discriminatory motivation as to three of the four considerations listed in *Coffman*, to wit, (1) "inconsistencies between the proffered reason and other actions of the employer;" (2) "an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity;" and (3) "disparate treatment of certain employees compared to other employees with similar work records or offenses." *See Coffman*, 411 F.3d at 1238.

Defendant contends that this claim must nonetheless be dismissed because Plaintiff was terminated based on the legitimate, non-pretextual reason of the discrepancies in his flight log book. However, Plaintiff's allegations, if true, demonstrate that this reason was pretextual and that other non-military pilot employees would not have been terminated under the same circumstances. Whether Defendant can meet its burden of demonstrating at summary judgment or trial that "legitimate reasons, standing alone" would nonetheless have resulted in the termination of Plaintiff's employment must be left to the appropriate stage of the litigation. *See Coffman*, 411 F.3d at 1238-39. Accordingly, the Court will deny the motion to dismiss as to the USERRA discrimination claim in Count I.

*Count II – Retaliation in violation of USERRA*

In Count II, Plaintiff alleges that Defendant retaliated against him in violation of USERRA, 38 U.S.C. § 4311(b), which makes it unlawful for an employer to take an adverse employment action against an employee who has taken action to enforce a protection under USERRA, as follows:

> (b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

38 U.S.C. § 4311(b). For an employee to state a claim under the anti-retaliation provision of USERRA, he must allege facts sufficient to demonstrate the following: "(1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Holt v. Hydraulic Hose of Hillsborough, LLC*, No. 8:18-CV-2082-T-33CPT, 2018 WL 7457682, at *2 (M.D. Fla. Nov. 9, 2018) (citation omitted). *See also Jones v. Dep't of Health & Human Servs.*, 703 F. App'x 977, 980 (Fed. Cir. 2017). "[W]hen the employee meets his initial burden, the employer may only avoid liability by showing that it would have taken the same action in the absence of the employee's protected action." *Id.* at 980.

Defendant advances several arguments in favor of dismissal of the retaliation claim, which the Court addresses, in turn.

First, Defendant argues that Plaintiff cannot meet the first element of engaging in a protected activity with regard to the January 31, 2019 complaint Plaintiff made with the County

Attorney and the Broward County Sheriff detailing the unlawful discrimination in violation of USERRA that he was subjected to by Interim Director of Operations Fuller. The Court agrees with Defendant. Because Defendant had made the decision to terminate Plaintiff's employment and indeed had already told Plaintiff of its intention to terminate his employment on January 28, 2019, Plaintiff's January 31, 2019 complaint cannot reasonably be found to be the basis for Defendant's decision to terminate his employment. *See, e.g., Dominguez v. Miami-Dade Cty.,* 669 F. Supp. 2d 1340, 1352 (S.D. Fla. 2009), *aff'd*, 416 F. App'x 884 (11th Cir. 2011) ("[T]the challenged conduct occurred before Dominguez filed his first USERRA complaint with DOL and cannot serve as the basis of a retaliation complaint."). However, that does not end the analysis as to whether Plaintiff has adequately alleged that he engaged in a protected activity. Plaintiff also alleges that on January 17, 2019, eleven (11) days prior to the January 28, 2019 meeting in which Defendant told him it was terminating his employment, Plaintiff complained during a closed-door meeting with Chief Smith and Pilot Brian McDonald about Fuller's discriminatory statements and hostility on the basis of his military service. Whether this complaint constitutes a complaint regarding "any benefit of employment" under the statute involves disputed factual issues that must be decided at summary judgment or trial. The Court will deny the motion to dismiss as to the first element, engaging in a protected activity.

Defendant also challenges the retaliation claim on the ground that its decision to terminate Plaintiff's employment was based on the legitimate, non-discriminatory reason of the discrepancies in Plaintiff's pilot log book and therefore cannot support a claim of retaliatory denial of retention of employment under USERRA. However, as the Court explained *supra,* Plaintiff's allegations, if true, demonstrate that this reason was pretextual, allowing a fact-finder to conclude that the decision to terminate Plaintiff's employment was more likely than not

motivated by a retaliatory motive. Defendant will have the opportunity at a later stage in this litigation to attempt to meet its burden of proving that "it would have taken the same action in the absence of the employee's protected action." *See Jones*, 703 F. App'x at 980.

The Court, in taking Plaintiff's factual allegations of retaliatory conduct as true, finds that Plaintiff has adequately alleged a USERRA retaliation claim. The motion to dismiss Count II shall be denied.

### IV.   CONCLUSION

Based upon the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Second Amended Complaint [DE 17] is **DENIED**;
2. Defendant shall file an answer within fourteen (14) days of the date of this Order.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Broward County, Florida, this 17th day of December, 2019.

*/s/ William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record