# Plaintiff's Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Broward Division**

**SCOTT THOMAS,**                              CASE NO.: 19-61324-CIV-DIMITROULEAS

                    Plaintiff,

          v.

**BROWARD COUNTY SHERRIFF'S**
**OFFICE,**
                    Defendant.

_____/

I, Scott Thomas, declare and state as follows:

1.   I have personal knowledge of the facts stated in this declaration and if I am called upon to testify about these facts stated under oath, I could do so competently.

2.   I served in the United States Armed Forces from May 2004 until I was honorably discharged in December 2011.

3.   The highest rank I attained was a Chief Warrant Officer II.

4.   After my honorable release from the Armed Forces, I was employed as a contract pilot with the FBI.

5.   I left my contract position with the FBI to work for a United State Agency supporting covert missions from April 2016 until February 2018.

6.   I applied for a position with BSO so that I could live closer to my physically disabled, elderly parents.

7. I submitted an application for employment and a resume to BSO in response to a job posting I reviewed for an Air Rescue Pilot position with BSO.

8. I was contacted and asked to interview with BSO for an Air Rescue Pilot position.

9. BSO did not ask me to bring my official logbooks to the interview. Instead, I presented an electronic version of my Flight Log Books.

10. My official logbooks were stored in a secure location in Virginia.

11. During the interview process, I presented BSO Pilot Brian Miller with the electronic version of my Flight Logbook.

12. I explained to BSO Pilot Brian Miller that my Official Flight Logbooks contained sensitive information that I was legally bound not to reveal because I had signed a non-disclosure agreement.

13. I did not include certain elements in my electronic logbook as the additional details required for an entry of same would require the disclosure of sensitive/and or confidential information.

14. After reviewing my electronic logbook and discussing why my cross-country time was not included in my electronic logbook, BSO Pilot Brian Miller suggested that I make a blanket in my electronic logbook because it was obvious, I had in excess of 900 hours of cross-country time which was a designation not used in military flight records.

15. I made a blanket 500-hour cross country blanket entry in my electronic flight logbook in BSO Pilot Miller's presence and with his consent.

16. Miller described the entry as a "conservative estimate."

17. I offered to bring my Official Flight Logbooks to BSO Pilot Brian Miller if they were needed.

*Thomas v. Broward County Sheriff's Office*
PLAINTIFF'S DECLARATION IN SUPPORT OF PLAITIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

18.  BSO Pilot Brian Miller was satisfied with the electronic record of my flight logbook.

19.  BSO Pilot Brian Miller did not ask me to submit a copy of my electronic logbook during the interview(s).

20.  Part of the interview process at BSO included taking a test that largely consisted of Part 135 Regulation questions.

21.  Part 135 experience was not listed as a requirement for the Air Rescue Pilot position with BSO.

22.  BSO hired me regardless of my poor Part 135 test score.

23.  My employment as an Air Rescue Helicopter Pilot was contingent upon his successful completion of the training program so long as BSO did not engage in unlawful discrimination which prevented me from successfully completing the training program.

24.  At all times that I was employed by BSO, I was in compliance with FAA regulations including and specifically with FAA regulations regarding flight logbooks.

25.  Danielle Fuller was one of two civilian pilots hired in the first Air Rescue Pilot class at BSO.  The second civilian pilot resigned from BSO on his first day.

26.  Danielle Fuller did not like military trained pilots.

27.  Danielle Fuller thought I was stupid because I was a military trained pilot.

28.  Danielle Fuller thought it was not fair that military trained pilots were exempt from Part 135 experience.

29.  I complained about Danielle Fuller's discriminatory anti-military comments to her.

30.  Danielle Fuller called me and the other military pilots stupid on multiple occasions.

31.  I believed, and continue to believe, that Daniel Fuller's comments were insulting, disrespectful and discriminatory on the basis of my military service.

32.   Danielle Fuller escalated the anti-military discrimination and harassment she subjected me to when she refused to allow me to request time off to attend a scheduled VA annual physical.  The way Fuller denied my request was condescending and discriminatory. She told me she was the parent, and I was a child and as the child I should not question her denial.   After being told that my request for time off to attend my VA for my annual checkup was not approved by Fuller, I did not circumvent Fuller's authority by requesting official time off.

33.   At the time I complained to her about her discriminatory anti-military comments, Ms. Fuller was my direct supervisor.

34.   Ms. Fuller targeted me for termination because I complained to her about her discriminatory anti-military comments by scrutinizing my flight logbook.

35.   Danielle Fuller claimed that my flight logbook contained major discrepancies which were not incompliance with FAA regulations. This allegation was false.

36.   Danielle Fuller did not adequately investigate alleged discrepancies she perceived in my electronic logbook.  Had she done so, she would have understood that the only discrepancy that was not disclosed to, and approved by, BSO was a singular scriveners' error on an aircraft tail number entry.

37.   My resume listed an estimate of Pilot in Command ("PIC") because my official logbooks were kept in storage in Virginia and I was unsure as to the exact number of my PIC hours and how they were categorized in my military records.

38.   The discrepancy between my resume and my electronic logbooks was disclosed at the time of my interview to Brian Miller.

4

*Thomas v. Broward County Sheriff's Office*
PLAINTIFF'S DECLARATION IN SUPPORT OF PLAITIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

39. When I interviewed with BSO Pilot Brian Miller, we discussed the subjective nature of PIC hours. Specifically, I told BSO Pilot Miller that I could have logged substantially more PIC time based on my military experience, but I chose to log my hours in a conservative manner. The conservative nature of my recorded PIC military hours is why I felt confident estimating my PIC hours as 1,500 on my resume. BSO Pilot Miller had full knowledge that 1500 was an estimate, as he had my electronic logbook in front of him which stated my total PIC hours as 1,433.

40. On January 10, 2019 Danielle Fuller asked me to bring in my logbooks for review. I was already on site at work when the request came in from Ms. Fuller.

41. The only records I had in my possession were my electronic logbook.

42. I informed Danielle Fuller that my official logbooks were in a storage unit in Virginia.

43. I also informed Danielle Fuller that BSO was previously aware that Plaintiff's logbooks were in his storage unit in Virginia.

44. BSO was aware of all of the discrepancies Danielle Fuller claimed were major discrepancies in my electronic flight logbook except for a single mislabeled tail number.

45. I was not given an opportunity to explain or correct the mislabeled tail number at any time.

46. Anyone at BSO could have verified my covert flights if they had the correct classification and if BSO has asked me to tender my official logbooks.

47. The discrepancies between my job application, logbook, and pilot experience form were not major. Rather, the majority of the documented information was consistent throughout the three forms. Any inconsistencies between the three forms was either

5

*Thomas v. Broward County Sheriff's Office*
PLAINTIFF'S DECLARATION IN SUPPORT OF PLAITIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

discussed with BSO Pilot Miller prior to Defendant's offer of employment or was justified due to additional actual flight time.

48. Danielle Fuller did not adequately investigate what she believed were major discrepancies in my flight logbook. Had she done so she would have learned that Brian Miller was told about all of the discrepancies except the incorrect tail number entry prior me receiving an offer of employment from BSO.

49. On January 17, 2019, Retired Naval Commander Brian McDonald and I complained to Chief Jason Smith, a BSO Command employee responsible for teaching the EMT class conducted at Barry University for BSO Pilots, about Danielle Fuller's anti-military bias.

50. One of my complaints to Chief Smith was that Danielle was observed cheating on her EMT test.

51. Every pilot except for Danielle Fuller failed at least one EMT test. Danielle Fuller however was observed cheating on her EMT test.

52. Chief Smith informed me that he would ask Chief Nugent to speak to the pilots on a one-on-one basis about my complaint of Danielle Fuller's anti-military discrimination.

53. After I complained to Chief Smith, I believed that Ms. Fuller would retaliate against me by failing me on flight tests because they are subjective. I was sure she would be "subjective in the future" but also continue to discriminate against, demean, and harass me because of my military service.

54. The following day, Chief Nugent refused to meet with each pilot individually to discuss their respective concerns about Danielle Fullers anti-military discrimination and harassment.

*Thomas v. Broward County Sheriff's Office*
PLAINTIFF'S DECLARATION IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

55.   I complained to Chief Nugent about Danielle Fuller's anti-military bias and her discrimination and harassment in a group setting.

56.   Chief Nugent responded to my complaint by stating she wished we could all just get along.

57.   I believe that BSO ratified Fuller's discriminatory comments and conduct because BSO chose to do nothing about my complaints to Chiefs Smith and Nugent, other than escalate the retaliation I was being subjected to at BSO.

58.   Eleven days later I was presented with the ultimatum that I needed to either resign or I would be fired.

59.   I asked to speak with a lawyer, but that request was denied by Chief Nugent.

60.   I tried to explain to Chief Nugent that the discrepancies in my logbook could be easily explained but she refused to give me an opportunity to explain.

61.   I explained that the mistaken tail number could be easily corrected but I was not given the opportunity to correct the typographical error in my logbook.

62.   Chief Nugent recommended that I resign and said I had to decide within 5 minutes.

63.   I was told that I was going to be escorted off premises by Officer Madrigal and I felt threatened.

64.   I believe I was forced to resign under duress.

65.   BSO reported the discrepancies they claimed were in my electronic logbook to the FAA.

66.   After investigation of the discrepancies reported to the FAA by BSO, the FAA verified my flight experience and concluded that all of my flight logbooks were in compliance the FAA regulations.

67.     The FAA representative confirmed that every pilot has discrepancies' and minor errors in their logbooks.  The FAA further indicated that any logbook that was subjected to scrutiny would reveal multiple discrepancies.

I declare under penalty of perjury under the laws of the state of Florida the foregoing is true and correct.

Dated this 23rd day of November 2020.

Scott Thomas