**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 19-61324-CIV-DIMITROULEAS**

SCOTT THOMAS,

     Plaintiff,

v.

BROWARD COUNTY SHERIFF'S
OFFICE,

     Defendant.

_____/

**AMENDED JURY INSTRUCTIONS**

**1.1**   General Preliminary Instruction

Members of the Jury:

     Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

     It is your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

1

<u>What is evidence</u>:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion. Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence</u>:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence.  In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

2

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence do not permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

3

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

·   the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

·   the witness's memory;

·   the witness's manner while testifying;

·   any interest the witness has in the outcome of the case;

·   any bias or prejudice the witness may have;

·   any other evidence that contradicts the witness's testimony.

·   the reasonableness of the witness's testimony in light of all the evidence; and

·   any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. In this case the Plaintiff, Scott Thomas, alleges that The Broward Sheriff's Office ("BSO"), illegally discriminated against Retired Chief Warrant

Officer[1] Scott Thomas by terminating his employment in part because of his prior military service.  Moreover, Scott Thomas alleges that he complained to BSO about being subjected to unlawful discrimination based on his military service during his employment with BSO and that he was terminated in retaliation for his lawful complaints.  BSO denies that it took any action against Scott Thomas because of his military service. BSO asserts that its decision to allow Scott Thomas to resign his employment was for legitimate reasons that were not based on his military service. BSO denies that Scott Thomas complained of military discrimination and denies that it took any action against Thomas due to any complaint of military discrimination.

Burden of proof:

Scott Thomas has the burden of proving his case by what the law calls a "preponderance of the evidence." That means Scott Thomas must prove that, in light of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Scott Thomas and the evidence favoring Defendant BSO on opposite sides of balancing scales, Scott Thomas needs to make the scales tip to his side. If Scott Thomas fails to meet this burden, you must find in favor of Defendant BSO.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise– consider the testimony of all

---

[1] Defendant objects to reference to Plaintiff as Retired Chief Warrant Officer.

witnesses, regardless of who called them and all exhibits that the court allowed, regardless of who produced them.  After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On  certain issues, called "affirmative defenses," Defendant BSO has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Defendant BSO must prove for any  affirmative defense. After considering all the evidence, if you decide that Defendant BSO has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

<u>Conduct of the jury</u>:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom.

It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and

phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Scott Thomas will present his witnesses and ask them questions. After Scott Thomas questions the witness, Defendant BSO may ask the witness

questions – this is called "cross-examining" the witness. Then Defendant BSO will present its witnesses, and Scott Thomas may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

### 1.4    Jury Questions

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

10

· First, you must submit all questions in writing. Please don't ask any questions aloud.

· Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

· Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

11

## 2.1    Stipulations

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

## 2.2    Use of Depositions

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

**[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]**

## 2.5    Judicial Notice

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted [state the fact that the court has judicially noticed] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

## 2.6    Use of Interrogatories

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] **gave the answers on the witness stand.**

### 3.1    **Introduction** (Basic Instructions)

<u>COURT'S INSTRUCTIONS TO THE JURY:</u>

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

### 3.2.3  The Duty to Follow Instructions – Government Entity or Agency Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a governmental entity or agency is involved as a party must not affect your decision in any way. A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a governmental agency is involved, of course, it may act only through people as its employees; and, in general, a governmental agency is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the governmental agency.

### 3.3    Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions.  You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

### 3.4     Credibility of Witnesses

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5.  Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

### 3.5.1  Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

### 3.5.2  Impeachment of Witness Because of Inconsistent Statements
### or Felony Conviction

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement. But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

### 3.7.1      Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of the Scott Thomas to prove every essential part of his claim[s] by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Scott Thomas' claims are more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Scott Thomas.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Scott Thomas' claim[s] by a preponderance of the evidence, you should find for BSO as to that claim.

### 3.7.2        Responsibility for Proof – Affirmative Defense Preponderance of the Evidence

In this case, the Defendant BSO asserts the affirmative defense[s] of [insert affirmative defenses]. Even if the Plaintiff Scott Thomas proves his claims by a preponderance of the evidence, the Defendant BSO can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the Defendant BSO does not have to disprove the Plaintiff's Scott Thomas's claim[s], but if the Defendant BSO raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

### 4.18   USERRA – 38 U.S.C. § 4311(a) – USERRA Discrimination – Including "Same Decision" Defense

In this case, Plaintiff Scott Thomas makes a claim under the Uniformed Services Employment and Reemployment Rights Act, also called USERRA. USERRA prohibits an employer from discriminating against an employee in the terms and conditions of the employee's employment because the employee has performed service in a uniformed service.

Plaintiff Scott Thomas claims that Defendant Broward County Sheriff's Office, BSO, discriminated against Scott Thomas by denying him continued employment and/or discharging him from employment because he was a member of a uniformed service.

Defendant BSO denies Scott Thomas's claim and asserts that Scott Thomas was separated from employment during his probationary period for legitimate reasons which were not discrimination.

To succeed on his claim, Scott Thomas must prove each of the following facts by a preponderance of the evidence:

First:  Plaintiff Scott Thomas performed service in a uniformed service;

Second:  Defendant BSO denied Scott Thomas continued employment and/or discharged Scott Thomas from employment; and

Third:  Scott Thomas's service in a uniformed service was a motivating factor that prompted Defendant BSO to take that action.

24

[In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.]

The United States Army is a "uniformed service."

If you find that Defendant BSO denied Scott Thomas continued employment and/or discharged Scott Thomas from employment, you must decide whether plaintiff's service was a motivating factor in Defendant BSO's decision.

To prove that Scott Thomas' membership in a uniformed service was a "motivating factor" in Defendant BSO's decision, Scott Thomas does not have to prove that his membership in a uniformed service was the only reason that Defendant BSO discharged Scott Thomas from employment. It is enough if Scott Thomas proves that his service in a uniformed service influenced BSO's decision to deny Scott Thomas continued employment and/or terminate his employment. If Scott Thomas's membership in a uniformed service made a difference in Defendant BSO's decision to deny Scott Thomas continued employment and/or terminate his employment, you may find that it was a motivating factor in the decision.

Defendant BSO states that Scott Thomas's membership in a uniformed service was not a motivating factor in its decision and that Scott Thomas was given the option to resign or be discharged for legitimate reasons not related to his military service. An employer may not discriminate against an employee because of the employee's service in a uniformed service. But an employer may discharge an employee for any other reason, good or bad, fair or unfair. If you believe Defendant BSO's reason[s] for its decision to deny Scott Thomas continued employment and/or discharge Scott Thomas and find that its decision was not motivated by Scott Thomas's membership in a uniformed service, you must not second guess Defendant BSO's decision and you must not substitute your own judgment for Defendant BSO's judgment– even if you do not agree with it.

As I have explained, Scott Thomas has the burden to prove that his membership in a uniformed service was a motivating factor in Defendant BSO's decision to terminate Plaintiff's employment. I have explained to you that evidence can be direct or circumstantial. To decide whether Scott Thomas's membership in a uniformed service was a motivating factor in BSO's decision to deny Scott Thomas continued employment and/or discharge Scott Thomas, you may consider the circumstances of BSO's decision, inconsistencies between the BSO's stated reasons for their employment decision and other actions of the employer, or BSO's expressed hostility towards Scott Thomas as a member of the military

together with BSO's knowledge that Scott Thomas served in the military. For example, you may consider whether you believe the reason[s] that BSO gave for the decision. If you do not believe the reason[s] that it gave for the decision, you may consider whether the reason[s] were so unbelievable that they were a cover-up to hide the true discriminatory reason[s] for the decision.

If you find in Scott Thomas's favor for each element that he must prove, you must decide the issue of his compensatory damages.

When considering the issue of Scott Thomas's compensatory damages, you should determine what amount, if any, has been proven by Scott Thomas by a preponderance of the evidence as full, just and reasonable compensation for all of Scott Thomas's damages as a result of the discharge, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Defendant BSO.  Also, compensatory damages must not be based on speculation or guesswork.

To the extent you find that Scott Thomas proved damages by a preponderance of the evidence, you must consider only net lost wages and benefits from the date of the discharge/to the date of your verdict. To determine the amount of Scott Thomas's net lost wages and benefits, you should consider evidence of the actual wages he lost and the monetary value of any benefits he lost.

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Scott Thomas to be reasonably diligent in seeking substantially equivalent employment to the position he held with Defendant BSO. To prove that Scott Thomas failed to mitigate damages, Defendant BSO must prove by a preponderance of the evidence that: (1) work comparable to the position Scott Thomas held with Defendant BSO was available, and (2) Scott Thomas did not make reasonably diligent efforts to obtain it. If, however, Defendant BSO shows that Scott Thomas did not make reasonable efforts to obtain any work, then Defendant BSO does not have to prove that comparable work was available.

If you find that Defendant BSO proved by a preponderance of the evidence that Scott Thomas failed to mitigate damages, then you should reduce the amount of Scott Thomas's damages by the amount that could have been reasonably realized if Scott Thomas had taken advantage of an opportunity for substantially equivalent employment.

If you find in Scott Thomas's favor and award him compensatory damages, you must decide whether Defendant BSO willfully violated the law. If Defendant BSO knew that its employment decision violated the law, or acted in reckless disregard of that fact, then its conduct was willful. If Defendant BSO

did not know, or knew only that the law was potentially applicable and did not act in reckless disregard as to whether its conduct was prohibited by the law, then Defendant BSO's conduct was not willful.[2]

_____

[2] Defendant objects as the Parties filed their Proposed Jury Instructions on Friday, 9/17/21 [DE 71]. Plaintiff's amended instruction contemplates alternative theories which were not advanced in the Complaint. Also, as worded, the amended language allows for duplicative instructions/or alternative grounds. The instructions are contrary to the Pattern Jury Instructions.

### 4.19   USERRA – 38 U.S.C. § 4311(b) – USERRA Retaliation

In this case, Scott Thomas claims that Defendant BSO retaliated against Scott Thomas because he took steps to enforce his lawful rights under the Uniformed Services Employment and Reemployment Rights Act, also called USERRA.

USERRA prohibits an employer from retaliating against an employee because the employee has asserted rights or made complaints under that law.

Specifically, USERRA prohibits an employer from retaliating against an employee who took action to enforce a protection afforded any person under USERRA or who exercised a right USERRA provides.

Scott Thomas claims that Defendant BSO denied Scott Thomas continued employment and/or terminated his employment because he complained about unlawful discrimination on the basis of his military status to Danielle Fuller and Chief Smith. Defendant BSO denies Scott Thomas's claim and asserts that Scott Thomas did not complain about discrimination based on his military status or otherwise engage in activity protected by USERRA.  Thomas was separated for reasons not related to his military status.

To succeed on his claim, Scott Thomas must prove all the following facts by a preponderance of the evidence:

First:    Scott Thomas engaged, in good faith, in an activity protected by USERRA;

Second: Defendant BSO took an adverse employment action (i.e BSO denied Scott Thomas continued employment) against Scott Thomas;

Third:   Scott Thomas's protected activity was a motivating factor that prompted Defendant BSO to take the adverse employment action; and

Fourth: Scott Thomas suffered damages because of the adverse employment action.

[In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.]

For the first element, Scott Thomas must prove by a preponderance of the evidence that he engaged, in good faith, in a protected activity. If you find that Scott Thomas made the complaint to enforce what he believed in good faith to be his lawful rights, he may not be penalized – even if the complaints of discrimination are later found to be invalid or without merit.  To establish "good faith," it is not enough for Scott Thomas to allege that his belief was honest and bona fide. The allegations and the record must also establish that the belief was objectively reasonable even though it might have been wrong.

For the second element, Scott Thomas claims that Defendant BSO took an adverse employment action against him when Defendant BSO denied Scott Thomas' continued employment and/or terminated his employment.   An "adverse employment action" is any type of action that might reasonably deter

Scott Thomas or another employee from engaging in an activity protected by law. Put another way, if Defendant BSO's challenged action would make a reasonable employee less likely to exercise his rights under USERRA, that action is an adverse employment action

For the third element, you must decide whether [his/her] protected activity was a motivating factor in Defendant BSO's decision. To prove that Scott Thomas's protected activity was a "motivating factor" in Defendant BSO's decision, Scott Thomas does not have to prove that his protected activity was the only reason that Defendant BSO denied Scott Thomas continued employment and/or terminated his employment. It is enough if Scott Thomas proves that his protected activity influenced Defendant BSO's decision.  If Scott Thomas's protected activity made a difference in Defendant BSO's decision to deny Scott Thomas continued employment and/or terminated his employment, you may find that it was a motivating factor in the decision.

Defendant BSO states that Scott Thomas's protected activity was not a motivating factor behind its decision to deny Scott Thomas continued employment and/or terminate his employment.  Defendant BSO states that Scott Thomas was given the option to resign or be discharged for legitimate reasons not relating to any alleged protected activity.  An employer may not take an adverse employment action against an employee because of the employee's

protected activity. But an employer may discharge an employee for any other reason, good or bad, fair or unfair. If you believe Defendant BSO's reason[s] for its decision and find that its decision was not motivated by Scott Thomas's protected activity, you must not second guess Defendant BSO's decision, and you must not substitute your own judgment for Defendant BSO's judgment – even if you do not agree with it.

For the fourth element, if you find that Scott Thomas engaged in protected activity and that Defendant BSO took an adverse employment action against him because of that protected activity, you must decide whether Defendant BSO's acts were the proximate cause of damages that Scott Thomas sustained. Put another way, you must decide whether these damages would have occurred if Defendant BSO had not terminated Scott Thomas' employment.

If you find that Defendant BSO's acts were the proximate cause of damages Scott Thomas sustained, you must determine the amount of damages.

If you find in Scott Thomas's favor for each element he must prove, you must decide the issue of his compensatory damages.

When considering the issue of Scott Thomas's compensatory damages, you should determine what amount, if any, has been proven by Scott Thomas by a preponderance of the evidence as full just and reasonable compensation for all of Scott Thomas's damages as a result of the adverse employment action no more and

no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Defendant BSO. Also, compensatory damages must not be based on speculation or guesswork.

To the extent you find that Scott Thomas proved damages by a preponderance of the evidence, you must consider only net lost wages and benefits from the date of the adverse employment action to the date of your verdict.

To determine the amount of Scott Thomas's net lost wages and benefits, you should consider evidence of the actual wages Scott Thomas lost and the monetary value of any benefits lost.

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Scott Thomas to be reasonably diligent in seeking substantially equivalent employment to the position he held with BSO. To prove that Scott Thomas failed to mitigate damages, Defendant BSO must prove by a preponderance of the evidence that: (1) work comparable to the position Scott Thomas held with Defendant BSO was available, and (2) Scott Thomas did not make reasonably diligent efforts to obtain it. If, however, Defendant BSO shows that Scott Thomas did not make reasonable efforts to obtain any work, then Defendant BSO does not have to prove that comparable work was available.

If you find that Defendant BSO proved by a preponderance of the evidence that Scott Thomas failed to mitigate damages, then you should reduce the amount of Scott Thomas's damages by the amount that could have been reasonably realized if Scott Thomas had taken advantage of an opportunity for substantially equivalent employment.

Scott Thomas also claims that Defendant BSO willfully violated the law. You will only consider this issue if you find for Scott Thomas and award him compensatory damages.

If the employer knew that its decision to allow Scott Thomas to resign or be terminated violated the law, or acted in reckless disregard of that fact, then its conduct was willful. If Defendant BSO did not know, or knew only that the law was potentially applicable and did not act in reckless disregard as to whether its conduct was prohibited by the law, then Defendant BSO's conduct was not willful.[3]

---

[3] Defendant objects as the Parties filed their Proposed Jury Instructions on Friday, 9/17/21 [DE 71]. Plaintiff's amended instruction contemplates alternative theories which were not advanced in the Complaint. Also, as worded, the amended language allows for duplicative instructions/or alternative grounds. The instructions are contrary to the Pattern Jury Instructions.

### 3.8.1  Duty to Deliberate When Only the Plaintiff Claims Damages

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

### 3.9      Election of Foreperson Explanation of Verdict Form[s]

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.