UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61324-CIV-DIMITROULEAS

SCOTT THOMAS,

    Plaintiff,

v.

BROWARD COUNTY SHERIFF'S
OFFICE,

    Defendant.
_____/

# DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR NEW TRIAL WITH INCORPORATED MEMORANDUM OF LAW

Defendant, BROWARD COUNTY SHERIFF'S OFFICE, (hereinafter "BSO"), through its counsel, Law Offices of Carmen Rodriguez, P.A., and pursuant to Rule 50(b) and Rule 59, Fed. R. Civ. P., hereby files its Renewed Motion for Judgment as a Matter of Law or, Alternatively, For New Trial, and states as follows:

1. Based on the evidence established at trial, Defendant is entitled to judgment as a matter of law as Plaintiff has failed to establish a violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §4301, et seq. ("USERRA"). Alternatively, Defendant requests that the Court grant a new trial as the verdict is clearly against the great weight of the evidence.

WHEREFORE, Defendant moves for judgment, as a matter of law, as to the Plaintiff's case in its entirety or, alternatively, for a new trial.

## MEMORANDUM OF LAW

Federal Rule of Civil Procedure 50 is the mechanism by which a Defendant can

challenge the sufficiency of Plaintiff's evidence at trial. "In considering a Rule 50(b) motion after the jury verdict, 'only the sufficiency of the evidence matters. The jury's findings are irrelevant.'" *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1099 (11th Cir. 2020) (citing *Cadle v. GEICO Gen. Ins. Co.,* 838 F.3d 1113, 1121 (11th Cir. 2016)) (quoting *Connelly v. Metro. Atlanta Rapid Transit Auth.,* 764 F.3d 1358, 1363 (11th Cir. 2014)). Judgment as a matter of law for a defendant is appropriate, 'when there is insufficient evidence to prove an element of the claim, which means that no jury reasonably could have reached a verdict for the plaintiff on that claim.'" *Id.* (citing *Cadle,* 838 F.3d at 1121) (quoting *Collado v. United Parcel Serv., Co.,* 419 F.3d 1143, 1149 (11th Cir. 2005)); *see also Munoz v. Oceanside Resorts, Inc.,* 223 F.3d 1340, 1344-45 (11th Cir. 2000). The Court can grant a Rule 50(b) Motion when there is no legal basis upon which the jury could have found for the Plaintiff. *Telecom Tech Servs, Inc. v. Rolm Co.,* 388 F.3d 820, 830 (11th Cir. 2004). "A mere scintilla of evidence is not sufficient to support a jury verdict." *Robbins v. Koger Props, Inc.,* 116 F.3d 1441 (11th Cir. 1997). It is well established that "the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Abel v. Dubberly,* 210 F.3d 1334, 1337 (11th Cir. 2000). Therefore, the granting of a Rule 50 motion is proper when, as here, the evidence is so weighted in favor of one side that Defendant is entitled to succeed in its position as a matter of law.[1]

In Count I, Plaintiff alleges that Defendant discriminated against him by terminating his employment in violation of USERRA, 38 U.S.C. § 4311(a), which makes it unlawful for an

---

[1] Citations to the trial transcript will be referred to as Trial Tr., followed by the trial day number and page number. For example, reference to the transcript for day 1 at page 1 will be referred to as Trial Tr. Day 1, 1.

2

employer to discriminate against an employee based on military service. For an employee to make a *prima facie* case of USERRA discrimination, he must establish facts to show that his protected status was a "motivating factor" in the employment decision at issue. *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005).

If the Plaintiff satisfies his *prima facie* case showing that his military status was a motivating factor in the decision, the burden then shifts to the employer to establish that legitimate, non-discriminatory reasons, standing alone, resulted in the termination of Plaintiff's employment. Plaintiff can only prevail if he then establishes that the proffered reason was a pretext for discrimination. *Staub v. Proctor Hosp.*, 562 U.S. 411, 417; 131 S. Ct. 1186, 1191 (2011) ("The statute is very similar to Title VII . . . "); *Landolfi v. City of Melbourne*, 515 F. App'x 832 (11th Cir. 2013).

### a. Plaintiff failed to establish that his military service was a motivating factor for his separation from employment.

As the Eleventh Circuit explained in *Coffman*: "military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Brandsasse*, 72 F.Supp.2d at 617 (citation omitted); *see also Smith*, 205 F.Supp.2d at 1314-15. The Court held that discriminatory motivation under the USERRA can be inferred from the following:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

3

*Coffman,* 411 F.3d at 1238.

Here, Plaintiff has failed to establish any factor from which discriminatory motivation could be inferred and, thus, Plaintiff failed to establish at trial that his former military status was a motivating factor in BSO's decision to separate his employment during his probation status. The undisputed record demonstrates that Plaintiff failed to meet his burden of showing a *prima facie* case of USERRA discrimination.

Plaintiff cannot base the inference of anti-military motivation on proximity in time between Plaintiff's former military service and his separation from BSO. Plaintiff was discharged from his military service in 2011 and has not had any active military service or status since through the time that BSO hired him as a probationary Air Rescue Helicopter Pilot in November 2018. Joint Pretrial Stipulation p.3, ¶E 1-2, DE 53; Trial Tr. Day 1, 171:19-21. It is undisputed that BSO was aware of Plaintiff's military service and pilot experience before it hired him as a probationary Air Rescue Helicopter Pilot in November 2018. Pl.'s Trial Ex. 4, DE 98-2. As the Court found on summary judgment, the time period of over seven years between Plaintiff's last military service and resignation negate any inference that his former military service was a motivating factor in any decision. Order on Def.'s Mot. for Summ. J. p.5, DE 54.

Likewise, Plaintiff cannot base the inference of military discrimination on disparate treatment. First, it was undisputed at trial that BSO had knowledge of Plaintiff's prior military service and pilot experience before it hired him. Moreover, <u>four</u> of the six pilots hired for the Air Rescue Division at the same time as Plaintiff all had military experience. BSO hired Plaintiff, Timothy Larsen, Jonathan Weiers and Brian McDonald as Air Rescue Helicopter Pilots at the same time and they were all military pilots with military experience. Joint Pretrial Stipulation

4

p.4, ¶¶ 16-17, DE 53; Trial Tr. Day 1, 119:25-120:4; 173:17-24. After Danielle Fuller became Chief Pilot, all four of the Air Rescue Helicopter Pilots in Plaintiff's training class (including Plaintiff) were pilots with military experience. Moreover, Plaintiff was unable to identify any nonmilitary pilot employed at BSO who had discrepancies or errors in their logbook and was treated any differently than himself with respect to their logbook.

Plaintiff likewise cannot base the required inference he must raise on inconsistencies in the proffered reason for Defendant's decision to separate him during his probationary period. BSO provided a consistent explanation for the decision - Plaintiff had unverified flight experience and discrepancies between his Pilot Experience Form, Resume, and personal electronic logbook. Joint Pretrial Stipulation p.4, ¶¶ 11-12, p.5, 22-23, 25, DE 53; Trial Tr. Day 3, 133-147; Def.'s Trial Ex.11, DE 96-2; Trial Ex.12, DE 96-3; Pl.'s Trial Ex.4, DE 98-2; Trial Ex.8, DE 98-3. It is undisputed that all the pilots, including Plaintiff, were asked to bring in their official logbooks for inspection pursuant to FAA requirements and the job posting. Pl.'s Trial Ex.3, DE 98-1. While Plaintiff disputes that during his interview with Brian Miller and Tammy Nugent he was told to bring in his logbook, Plaintiff does not dispute that on January 10th Danielle Fuller sent out a group text to all pilots directing them to bring in their logbooks. Trial Tr. Day 1, 187:7-10; Day 2, 20:12-23. The undisputed testimony is that all of the other pilots complied. Only Plaintiff did not comply and he told Danielle Fuller (as he stated he had told Brian Miller) that his logbooks were in storage in Virginia.[2] Trial Tr. Day 2, 148-149. Thus, the

---

[2] While Defendant has the right to require all pilots to bring their logbooks when and where directed, and all other military pilots did, between January 10th, when it is undisputed Plaintiff was directed by his supervisor to bring in his logbooks, and the date of his separation January 28th, Plaintiff had failed to bring his logbooks from Virginia to provide to BSO.

5

undisputed evidence is that the only pilot that failed to comply with the directive to bring his logbooks was Plaintiff and that the three other military pilots complied with the directive to have their logbooks reviewed. Having no official logbooks to review for Plaintiff, Plaintiff's flight experience could not be verified. Fuller proceeded to review what she had for him - his personal phone app electronic logbook, Resume and Pilot Experience Form - which was the only documentation he had provided to support his flight hours' experience. Joint Pretrial Stipulation p.5, ¶E 25, DE 53; Trial Tr. Day 2, 9, 150-152; Day 3, 58, 77. Plaintiff did not dispute at trial that his personal logbook had discrepancies and errors and that there were discrepancies between his personal logbook, Pilot Experience Form, and Resume. Trial Tr. Day 2, 21-22; Day 2, 150-154; Joint Pretrial Stipulation p.5, ¶E 22-23, DE 53. Moreover, Fuller reviewed the logbooks provided by all the other air rescue pilots, **all of whom were military**. Fuller found that the logbooks of the other military pilots were compliant and she found no discrepancy or error in their flight experience records. Trial Tr. Day 2, 150:7-15. Thus, Plaintiff cannot base any inference of discrimination on either inconsistent explanations or disparate treatment. *Coffman v. Chugach Support Servs.*, 411 F.3d 1231, 1239 (11th Cir. 2005)(concluding that no reasonable jury could find plaintiff's military status was a motivating factor in employer's decision not to hire him as it hired both military and non-military personnel and plaintiff failed to show disparate treatment of service members compared to other employees with similar work records); *Loperena v. Scott,* 356 F. App'x 240, 242-43 (11th Cir. 2009); *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1015 (Fed. Cir. 2001); *see also Dominguez v. Miami-Dade Cnty.,* 416 F. App'x 884, 885 (11th Cir. 2011).

This leaves Plaintiff to establish that his long prior military experience was a motivating

6

factor as a result of "expressed hostility" by the **employer** towards members of the military. Here, Plaintiff alleged at trial that only Danielle Fuller made disparaging comments which he claims were based on his military status. However, the specific statements that Plaintiff attributed to Fuller do not constitute evidence of military bias.

Plaintiff alleges that comments about his lack of Part 135 experience by Fuller evidence anti-military bias because Plaintiff alleges he did not have Part 135 experience and was exempt from the requirement during his military service. Plaintiff does not dispute that Part 135 experience was preferred for the position. Pl.'s Trial Ex. 3, DE 98-1. At no time during the seven years between Plaintiff's military discharge and hiring at BSO did he obtain any Part 135 experience despite that he worked as a civilian pilot. Joint Pretrial Stipulation p.3, ¶E 5, DE 53. Thus, Plaintiff lacked Part 135 experience not because he was a former military pilot, but because he had not sought that experience also as a civilian pilot in the seven years afterward. Plaintiff testified at length about alleged covert operations for a government contractor. However, Plaintiff was not in the military at the time and this civilian work does not qualify for protection under USERRA. Plaintiff alleges that Fuller told him he was "stupid" when he incorrectly completed a form on a hospital run and she also allegedly called him "stupid" when he failed a test for their EMT certification. However, none of the specific statements Plaintiff attributed to Fuller were based on his military service and cannot form the basis for "expressed hostility" due to military service. Trial Tr. Day 1, 178:18-180:1; 180:2-182:1. Plaintiff's conclusory testimony labeling these statements as "anti-military" is insufficient to satisfy Plaintiff's burden.

However, even assuming arguendo that any of Fuller's statements constituted hostility

7

based on Plaintiff's military status, Plaintiff cannot establish that Fuller was the decision maker as to his separation or that the decision maker, Chief Tammy Nugent, rubber-stamped the recommendation of Fuller under a "Cat's paw" theory of liability to BSO. The undisputed evidence presented at trial was that Tammy Nugent received a one page memorandum from Fuller recommending Plaintiff's separation from employment during his probation for unverified flight experience and discrepancies in his flight hours. Def.'s Trial Ex.11, DE 96-2. The undisputed testimony is that Nugent then met jointly with Fuller <u>and military pilot and Director of Operations, Jesse Madrigal</u> to review the records - electronic logbook, resume and Pilot Experience Form that were the basis for the recommendation. Def.'s Trial Ex.12, DE 96-3; Pl.'s Trial Ex.4, DE 98-2, Ex. 8, DE-98-3; Trial Tr. Day 2, 168-169; Day 3, 132-134, 147. Nugent testified that she reviewed <u>each</u> entry of Fuller's findings with Madrigal and Fuller because she wanted to satisfy herself that the basis was <u>justified</u> and substantiated and that she had consensus from Madrigal as a subject matter expert. Trial Tr. Day 3, 132-134, 147. *Staub v. Proctor Hosp.*, 562 U.S. 411, 421; 131 S. Ct. 1186, 1193 (2011). In fact, the decision was entirely justified, as the basis for the recommendation was <u>undisputed to be true</u>. The findings were twofold:

1. Plaintiff presented "no verifiable flight experience." True, as Plaintiff never provided his official logbooks he had stored in Virginia with endorsements and signatures to verify his flight experience. Trial Tr. Day 3, 121-122, 142; Day 2, 21-22; Day 2, 148-149. Joint Pretrial Stipulation p.4, ¶E 11-12, DE 53.

2. "discrepancies between his application, personal electronic logbook and Pilot Experience Form." True, as Plaintiff acknowledges errors and discrepancies in his electronic logbook and Pilot Experience Form. Trial Tr. Day 2, 47:9-19; Day 2, 223:19-226:2; Joint Pretrial Stipulation p.5, ¶E 22-23, 25, DE 53.

8

Nugent testified that having reviewed the documents and discrepancies with Fuller and Madrigal and confirming the basis <u>was true</u> and substantiated, she moved forward on the decision to separate Plaintiff during his probationary period. Thus, the undisputed evidence is that Nugent did not delegate fact-finding to Fuller. Instead, she fully reviewed the record with Madrigal to ensure he was in consensus and to ensure that the decision was entirely justified, apart from Fuller's recommendation. More importantly, Plaintiff cannot dispute that the basis for the recommendation was true, as he had not verified his flight experience because he had never tendered his official logbooks and he admitted to a myriad of discrepancies and errors between his electronic logbook, resume and his Pilot Experience Form. Joint Pretrial Stipulation p.4, ¶E 11-12; p.5, ¶22-23, 25, DE 53. On this undisputed record, Plaintiff cannot establish any of the factors as set forth in *Coffman* on which he can base an inference of discrimination and he cannot satisfy his duty to establish that his military experience was a motivating factor for the decision to separate his employment.[3]

Under similar facts, in *Loperena v. Scott,* 2009 U.S. Dist. LEXIS 33544 at *43-44 (M.D. Fla. Apr. 21, 2009), the Middle District found that plaintiff failed to present evidence that his past military service was a motivating factor in the employer's decision not to hire him. There, the employer knew about plaintiff's military status when it extended him a conditional offer of employment, the employer offered unrebutted testimony that it regularly hires applicants with

---

[3] At trial, Plaintiff sought to establish motivation by questioning Fuller as to why she did not give him <u>extra</u> time to comply or why she did not correct the errors and discrepancies in his flight hours. As the Court correctly noted, those claims are entirely irrelevant as the Sheriff can discharge an employee for good or bad reason even if they did a poor job deciding. The law protects against discrimination-period. Trial Tr. Day 3, 73-74. Plaintiff's arguments confused the jury as to the legal requirements to establish his claim.

9

military experience, and plaintiff offered no evidence of disparate treatment of military service members. On appeal, the Eleventh Circuit affirmed and explained that the Middle District had rejected plaintiff's USERRA claim because he could not show that "but for" his military service, he would have been hired, as the evidence showed that the employer routinely hired members of the military. *Loperena v. Scott,* 356 F. App'x 240, 242-43 (11th Cir. 2009).

Here, just as in *Loperena,* the undisputed facts establish that BSO routinely hires pilots with military experience as it hired three other Air Rescue Helicopter Pilots with military pilot experience into Plaintiff's same probationary training class. Additionally, Jesse Madrigal, who served as Director of Operations next in line with authority over Fuller and was active military during his employment with BSO, participated with Tammy Nugent to review the documentation and he concurred that the reasons for the separation of Plaintiff were entirely justified. As such, the record is clear that BSO regularly hires and employs military pilots and there was no disparate treatment of Plaintiff because of his military service. Moreover, the uncontroverted testimony establishes that there is no evidence of disparate treatment of military pilots with respect to their logbooks and flight records. Fuller, who was responsible for compiling and reviewing flight records of pilots in the Air Rescue program based on her job description, asked all pilots in Plaintiff's training class to complete a Pilot Experience Form and bring their logbook for review on January 10, 2019. Def.'s Trial Ex.8, DE 96-1; Trial Tr. Day 2, 21-22. At the time, all four Air Rescue Helicopter Pilots in Plaintiff's training class were military pilots. Fuller reviewed the flight records for all the pilots, all military, and was fully satisfied with the records presented by all of the three others. Fuller did not find any discrepancies, errors or deficiencies as to the flight records of any of the other military pilots.

10

Her findings were <u>only</u> as to Plaintiff, who <u>admittedly</u> had errors and discrepancies in his personal electronic logbook, Resume and Pilot Experience Form. Plaintiff was also the <u>only</u> one who failed to bring his official logbooks to verify <u>any</u> part of his flight experience.

Thus, Plaintiff failed to present any evidence whatsoever that the basis for her recommendation was fabricated or premised on military bias. Based on these undisputed facts, Plaintiff cannot show that his military service was a motivating factor in BSO's determination that he did not meet probationary standards of an Air Rescue Helicopter Pilot. *See also, Stimpson v. Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999)("the plaintiff must prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the decision to terminate the employee.") This Plaintiff cannot do here. Plaintiff's arguments or opinion as to whether the decision was fair, which is precisely and exclusively what he improperly argued to the jury, cannot replace the decision of BSO as a matter of law. "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [his] business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason on the head and rebut it, and [he] cannot succeed by simply quarreling with the wisdom of that reason.'" *Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253,1265-6 (11th Cir. 2010)(quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000); *Duncan v. Alabama*, 734 F. App'x 637, 640 (11th Cir. 2018)(affirming judgment to employer in race discrimination case where undisputed evidence indicated that plaintiff's admitted misconduct was the basis justifying the decision to demote her, apart from any bias tainting the recommendation, and thus any alleged bias was not the proximate cause of

her demotion). Here, Plaintiff cannot rebut the proffered reasons - period - where he admits the errors and discrepancies in the flight history he provided to BSO.[4]

In conclusion, Plaintiff fails to present evidence and cannot demonstrate that BSO "relied on, took into account, considered, or conditioned its decision" regarding his probationary employment as an Air Rescue Helicopter Pilot on his former military service. As such, Plaintiff failed to establish a *prima facie* case of USERRA discrimination and BSO is entitled to judgment as a matter of law in its favor.

In Count II, Plaintiff alleges that Defendant retaliated against him in violation of USERRA, 38 U.S.C. § 4311(b), by separating his employment for his alleged complaints about "anti-military" comments by Fuller. USERRA provides as follows:

> (b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

For an employee to state a claim under the anti-retaliation provision of USERRA, he must allege facts sufficient to demonstrate the following: "(1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the

---

[4] In fact, Plaintiff's counsel went through entry upon entry of acknowledged errors and discrepancies in Plaintiff's electronic logbook and claimed that if BSO had gone through and corrected his errors for Plaintiff, he could arguably have had more flight experience so as to meet the qualifications. Trial Tr. Day 3, 39-55.

12

protected activity and the adverse employment action." *Holt v. Hydraulic Hose of Hillsborough, LLC*, No. 8:18-CV-2082-T-33CPT, 2018 WL 7457682, at *2 (M.D. Fla. Nov. 9, 2018) (citation omitted). *See also Jones* v. *Dep't of Health & Human Servs.*, 703 F. App'x 977, 980 (Fed. Cir. 2017).

Section 4311(a) provides that a person who performed military service "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that . . . performance of service." Plaintiff's testimony failed to establish that he engaged in any action to enforce a protection afforded under USERRA. Plaintiff testified that he spoke to his EMT instructor, Jason Smith, on January 17, 2019 about Fuller. Plaintiff did not testify to being aware of any write up or adverse recommendation against him by Fuller at that time.[5] Based on Plaintiff's testimony, he did not complain about being denied employment or any other adverse job action protected under USERRA. As such, the undisputed record establishes that Plaintiff failed to show that he engaged in a protected activity in the first instance and he therefore failed to meet his initial burden on his retaliation claim.

Even if Plaintiff could show that he engaged in a protected activity, he still failed to show that the protected activity was a motivating factor in BSO's decision that he did not meet probationary standards. To show causation, Plaintiff must "prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the

---

[5]In fact, Plaintiff testified that when he was asked to report on January 28th, he believed that he was going in for a drug test; thus, even as of January 28th, he was unaware that there was any recommendation for separation or any adverse job action. Trial Tr. Day 1, 205:12-206:16; 208:1-6.

13

recommendation, was an actual cause of the other party's decision to terminate the employee." *Hanford v. GEO Grp., Inc.,* 345 F. App'x 399, 406 (11th Cir. 2009)(citing *Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1246, 1248 (11th Cir. 1998)); *see Ward v. UPS,* 580 F. App'x 735 (11th Cir. 2014)(applying Title VII causation principles to evaluate a USERRA retaliation claim). As discussed above, Plaintiff failed to establish causation.

Here, Plaintiff alleges causal connection based on alleged temporal proximity. Plaintiff claims that 11 days after he complained to Smith on January 17th, he was called in and separated from employment on January 28th. Trial Tr. Day 1, 200:9-201:20; 205:2-206:23. However, Plaintiff's argument ignores the timeline here. In a retaliation case, when an adverse employment action is recommended or contemplated before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation. It is well established that there is no temporal proximity or causation where the actions that ultimately lead to the challenged employment decision began prior to the alleged protected activity. *Drago v. Jenne,* 453 F.3d 1301, 1308 (11th Cir. 2006). In *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 309 (4th Cir. 2006), in affirming dismissal of a USERRA retaliation claim, the court found that "temporal proximity" was insufficient and explained that "[t]he actions that led to [plaintiff's] probation and termination began *before* her alleged protected activity, belying the conclusion that a reasonable factfinder might find that [defendant's] activity was motivated by [plaintiff's] USERRA complaints." Fuller asked the pilots to complete a Pilot Experience Form on January 2, 2019 and to bring their logbooks for review on January 10, 2019. Pl.'s Trial Ex. 8, DE 98-3; Trial Tr. Day 2, 20:12-23; Day 3, 75:23-76:1. Based on her review of his records and lack thereof, Fuller

14

found that Plaintiff had unverified flight experience and discrepancies in the flight experience he submitted to BSO and made a written recommendation dated January 10, 2019 to Fire Rescue Command for his release from probationary employment. Def.'s Trial Ex.11, DE-96-2. Therefore, Plaintiff's January 17th complaint is insufficient to support his retaliation claim where the actions leading to the challenged employment decision began *before* he made his complaint. *Dominguez v. Miami-Dade Cnty.,* 669 F.Supp. 2d 1340, 1352 (S.D. Fla. 2009); *see also Francis,* 452 F.3d at 309.

In sum, based on the undisputed record, Plaintiff cannot establish that he engaged in protected activity, but even if he could, his alleged complaints could not have been a motivating factor in the challenged employment decision because the actions leading to the decision started before his alleged complaint. As such, Plaintiff failed to meet his initial burden on his USERRA retaliation claim and Defendant is entitled to judgment in its favor.

Even if Plaintiff could make out his allegation of USERRA discrimination or retaliation *prima facie*, which he clearly cannot, Defendant is entitled to judgment in its favor. The record established, as Defendant consistently argued and supported with unrebutted evidence at trial, that BSO had legitimate non-discriminatory reasons, which alone justified the adverse action. Joint Pretrial Stipulation p.10, ¶H 4-6, DE 53. As discussed above, Nugent reviewed and confirmed that the basis for the recommendation was "entirely justified" outside of Fuller's recommendation (including by reviewing the documentation with none-other than the Director of Operations, who is himself a military pilot). *Staub,* 562 U.S. at 413, 421; *Coffman,* 411 F.3d at 1239; *see also 20 CFR 1002.248* (employer prevails on USERRA discrimination claim where employer establishes legitimate nondiscriminatory reason for job action).

15

The Federal Aviation Administration ("FAA") is authorized to create regulations and minimum standards for practices, methods and procedure necessary for safety in air commerce. *Hughes v. Eleventh Judicial Circuit of Fla.,* 274 F. Supp. 1334, 1342 (S.D. Fla. 2003)(citing 49 U.S.C. §44701(a)(5)). "A key factor in flight safety is the qualifications and capacity of those at the helm of the flights, namely the pilots." *Id.* As Danielle Fuller testified, Part 135 prescribes rules governing air ambulance operations. 14 C.F.R. §135.1(a). BSO must keep, and make available for inspection by the Administrator, the record of each pilot used in operations, including the records of the pilot's experience. Trial Tr. Day 2, 146-170; Pl.'s Trial Ex.3, DE 98-1. Fuller's job description with BSO as Chief Pilot clearly specified that she was responsible for maintaining those flight records as required by the FAA. Pl.'s Trial Ex.8, DE 98-3.

Here, BSO was starting an Air Rescue program in its EMS Division that would operate under Part 135 regulations. As specified in the Air Rescue Helicopter Pilot job posting, pilots must comply with FAA regulations and provide flight data and logs as a job requirement. Pl.'s Trial Ex.3, DE 98-1. Plaintiff was hired at BSO as a Helicopter Pilot in its Air Rescue program in November 2018 and subject to a one year <u>probationary period</u>, during which he could be terminated at any time for not meeting probationary standards. Def.'s Trial Ex.17, DE-96-4. While USERRA affords certain protections to service members, it certainly does not exempt those in the military from complying with the employer's rules and job requirements. *Corbin v. Southwest Airlines, Inc.,* 2018 U.S. Dist. LEXIS 171672 at*43(S.D. Tex. Oct. 4, 2018).

BSO clearly established that it had legitimate, non-discriminatory reasons standing alone for its determination that Plaintiff did not meet probationary standards of the Air Rescue Helicopter Pilot position. As reviewed in detail above, there is no doubt that Plaintiff never

16

produced his official logbooks which he consistently claimed he had in storage in Virginia. He knew that this was precisely what was being requested as he testified he told Fuller (and Miller before her) that those records were stored in Virginia.[6] Trial Tr. Day 1, 156:23-157:10; Day 2, 21:14-22:4. Joint Pretrial Stipulation p.4, ¶E 11-12; p.5, ¶E 25, DE-53. Plaintiff also admitted that there were errors and discrepancies in his personal electronic backup logbook internally and as compared to the Pilot Experience Form he himself completed. Chief Nugent did not merely rely on Fuller's recommendation to separate Plaintiff during his probationary period. She reviewed the documents themselves and reviewed each alleged error and discrepancy with <u>military pilot</u> and Director of Operations Jesse Madrigal, and Chief Pilot Fuller at their meeting to review Plaintiff's records. Nugent based her decision on the independent review with and the concurrence of Jesse Madrigal, as Fuller's next level manager, to ensure that the grounds for separation were entirely justified apart from Fuller's recommendation. There is no evidence that Chief Nugent merely rubber-stamped Fuller or that her decision was based on any discriminatory animus toward Plaintiff.

---

[6]While it is entirely irrelevant to an employer's right to discharge for non-compliance, Plaintiff had, at a minimum, from January 10 through the date of his separation on January 28, to provide his official logs and never did. His argument that he could have, should have, been provided even more time has no legal or factual basis. Moreover, Nugent testified that she was present for his interview on August 2, 2018, wherein she heard Miller clearly tell Plaintiff that he needed to provide his official records from Virginia ASAP and was present to know that Plaintiff was the only one of the Pilots interviewed who did not have his official logbooks at the interview. It does not matter what Plaintiff understood. The decision-maker, Nugent, was under the clear understanding that Plaintiff was directed to provide his logbooks to BSO at the time of his interview in August, again requested by text message to all pilots by Fuller on January 10th and that from the date of the interview through the date of his separation, he had not provided BSO with any part of his official logbooks. Trial Tr. Day 3, 121-122, 142.

17

Based on the foregoing, Defendant has met its burden of establishing that its decision was "entirely justified" and that the same determination concerning Plaintiff's probationary employment as an Air Rescue Helicopter Pilot was justified despite his former military service or any alleged protected activity.

Once, as here, the employer establishes that it had legitimate reasons standing alone for the employment decision, the Plaintiff can only prevail if he can establish that the employer's reason was pretext. "Under this analysis, courts must evaluate whether the plaintiff demonstrated such weakness, implausibilities, inconsistences, incoherencies or contradictions in the proffered reason so that a reasonable factfinder could conclude that it is unworthy of credit." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 835 (11th Cir. 2013). Plaintiff here failed to present any evidence of pretext. As the reason proffered by BSO is one that would motivate a reasonable employer.

Alternatively, Defendant moves for new trial under Rule 59, Fed. R. Civ. P., as the jury verdict stands contrary to the great weight of the evidence. The law is clear that a district judge may grant a motion for a new trial if he believes the verdict rendered by the jury was contrary to the great weight of the evidence. *Ard v. Southwest Forest Industries*, 849 F.2d 517, 520 (11th Cir. 1988) (citing *Watts v. Great Atlantic and Pacific Tea Co., Inc.* 842 F.2d 307, 310 (11th Cir. 1988). The granting of a new trial pursuant to Rule 59 is reviewed for abuse of discretion. *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1099 (11th Cir. 2020) (citing *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1242 (11th Cir. 2008). This abuse of discretion standard recognizes "the deference that is due the trial court's first-hand experience of the witnesses, their demeanor,

18

and the context of the trial." *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987).

When ruling on a motion for a new trial, the judge should determine "if in his opinion 'the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (citations omitted). *Ins. Co. of N. Am. v. Valente*, 933 F.2d 921, 922-23 (11th Cir. 1991)(the district court abused its discretion in not granting a new trial based on the weight of the evidence).

In considering the trial court's Order granting a motion for a new trial in an employment discrimination matter on the issue of whether the Plaintiff met his burden to establish discriminatory motive, the Eleventh Circuit held that, although the Plaintiff introduced some evidence, the evidence was so weak and attenuated that the trial court did not abuse its discretion in granting a new trial. Accordingly, the Eleventh Circuit affirmed the Order granting a new trial. *Ard v. Southwest Forest Industries,* 849 F.2d 517, 521 (11th Cir. 1988). The assessment of the evidence in *Ard* precisely mirrors the trial court's assessment of the evidence here, as the Court was compelled to conclude: "I think it's a very weak case." Trial Tr. Day 3, 198.

Based on the evidence presented at trial as reviewed herein, if the Court should deny Defendant's Motion for Judgment as a Matter of Law, a new trial is warranted to prevent a miscarriage of justice.

## **CONCLUSION**

For the reasons stated herein and consistent with the applicable law, Defendant respectfully requests that the Court grant Defendant's Motion for Judgment as a Matter of Law as to Plaintiff's case in its entirety. Alternatively, should the Court deny Defendant's Motion as to all or as to any part of Plaintiff's claims, Defendant requests that the Court grant Defendant a new trial thereon.

Dated: February 21, 2022

Respectfully submitted,

s/Carmen Rodriguez
Carmen Rodriguez (Florida Bar No. 710385)
Email: crpa@crlaborlawfirm.com
Law Offices of Carmen Rodriguez, P.A.
Palmetto Bay Centre
15715 South Dixie Highway, Suite 411
Palmetto Bay, Florida 33157-1884
Telephone:  (305) 254-6101
Facsimile:   (305) 254-6048
Attorneys for Defendant