**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 19-61324-CIV-DIMITROULEAS**

SCOTT THOMAS,

    Plaintiff,

v.

BROWARD COUNTY SHERIFF'S
OFFICE,

    Defendant.

_____/

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS**
**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**
**OR, ALTERNATIVELY, FOR NEW TRIAL**

Defendant, BROWARD COUNTY SHERIFF'S OFFICE, (hereinafter "BSO"), through its counsel, Law Offices of Carmen Rodriguez, P.A., hereby files its Reply Memorandum in Support of its Renewed Motion for Judgment as a Matter of Law or, Alternatively, For New Trial [DE 103], and states as follows:

During the trial in this matter, the Court became concerned about the evidence presented by Plaintiff and its relevance to the legal issues properly before the Court. The Court made clear during trial:

> I think the sheriff can fire people or constructively discharge people for any reason, good or bad. It's only if it's a discriminatory reason that gives them a federal cause of action, and if they did a lousy job deciding whether to continue Mr. Thomas' employment, that's not something that my court has jurisdiction over. Again, they can fire people for good or bad reasons; it's only if it's discriminatory . . . but I don't think the jury should be confused to the point where they think that if they disagree with how Mr. Thomas was treated, that they think he shouldn't have been fired, that the Sheriff's Office didn't do a very good job in being fair to him, that's not a cause of action in my

>   court. It's only if the Sheriff's Office used as a motivating factor to discriminate against him because of his military service. Trial Tr. Day 3, 73-74.

Of course, the Court's comments were grounded in the well-established law. Just recently, this Court summarized the applicable law in *Herrera v. City of Hialeah,* 2021 U.S. Dist. LEXIS 218033; 2021 WL 5630914 (S.D. Fla. Dimitrouleas, November 10, 2021)in analyzing a USERRA claim:

>   ". . . it is not the Court's role to second guess an employer's decisions so long as those decisions are not motivated by discrimination. *See, e.g., Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."); *Rojas v. Florida,* 285 F.3d 1339, 1342 (11th Cir. 2002) ("We are not interested in whether the conclusion is a correct one, but whether it is an honest one."); *Tranter v. Crescent Twp.,* 625 F.Supp.2d 298, 303 (W.D. Pa. 2007) (applying this reasoning to a USERRA action).

Yet, undaunted by the Court's directive, it is precisely such improper and irrelevant arguments that Plaintiff argued to the jury as "evidence" of discrimination and <u>precisely</u> what he relies on here again. Plaintiff's Response to Defendant's Motion consists largely of claiming that he satisfied his burden to establish that his military status was a motivating factor by claiming that BSO "could have/should have" afforded Plaintiff additional considerations not required of an employer, including: additional time to provide his official flight records, corrected for the Plaintiff the myriad of <u>undisputed</u> errors and discrepancies in the personal phone app flight log he submitted to BSO or questioned him about the errors and discrepancies to afford him the opportunity to correct them. None of those considerations are required of an employer and failure to be "nice" or "fair" does not constitute military discrimination as a matter of law.

Plaintiff next cites to *Reeves v. Sanderson Plumbing Prods, Inc.* 530, U.S. 133; 120 S. Ct.

2097 (2000), but ignores the key part of the holding relevant here. In fact, in *Herrera,* this Court also cited to *Reeves* for that part of its holding stating that an employer would be entitled to judgment as matter of law if a plaintiff created "only a weak issue of fact" as to whether the proffered reason <u>was untrue</u> and there was "abundant and uncontroverted independent evidence that no discrimination occurred," precisely as here.

Plaintiff claims that at page 3 of the Motion, Defendant misleads the Court as to the applicable analytical framework which Plaintiff concludes is "fueled by Defendant's misperception of the burden shifting framework in a USERRA action."[1] Pl.'s Response, p.4, n.1. The reference to Title VII at page 3 of BSO's Motion to which Plaintiff refers is in fact a quote from the Supreme Court's decision in *Staub v. Proctor Hosp.*, 562 U.S. 411, 417; 131 S. Ct. 1186, 1191 (2011). In fact, BSO's Motion (like its Motion for Summary Judgment before that) is predicated on the applicable law as to USERRA claims. The standard utilizes the factors of legitimate, non-discriminatory reasons (as proffered by Defendant) and the Plaintiff's burden to prove pretext, consistent with *Coffman v. Chugach Support Services, Inc.*, 411 F.3d 1231 (11th Cir. 2005).

Plaintiff's Response does not address at all Plaintiff's burden to establish pretext and, thus,

---

[1] Defendant's counsel reviewed the trial transcript cited by Plaintiff on this issue. The transcript does not read the way that Defendant's counsel recalls this exchange with the Court in person at trial. Defendant's counsel heard the Court to ask if Defendant was proceeding on "any <u>other</u> affirmative defense"; referring to Defendant's defense that Plaintiff had resigned his position and thus Defendant did not take an adverse job action. Defendant presented limited testimony on the issue based on the ruling on the Order on Summary Judgment on this defense, so Defendant understood this is what the Court was asking. It would not make sense for Defendant not to be proceeding on the employer's defense under USERRA. As Plaintiff concedes, Defendant had fully presented at trial its defense that BSO had legitimate reasons for the job action irrespective of Plaintiff's military status. If the transcript is correct, it seems that, with everyone wearing masks at trial due to the COVID restrictions in place, Defendant's counsel simply did not hear the Court correctly.

does not respond at all to BSO's argument in its Motion that Plaintiff failed to produce sufficient evidence of pretext. Plaintiff's claim that pretext is not part of the analysis under USERRA is in error. *See Herrera v. City of Hialeah,* 2021 U.S. Dist. LEXIS 218033; 2021 WL 5630914 (S.D. Fla. Dimitrouleas, November 10, 2021) (citing *Coffman*, 411 F.3d at 1238-39 in holding that Plaintiff failed to offer sufficient evidence of pretext).

Plaintiff argues that the two factors on which he relies to establish that his military status was a "motivating factor" are expressed hostility toward members of a protected class and inconsistencies in the proffered reasons for the decision. Plaintiff's evidence on these factors was irrelevant and plainly insufficient. At best, it was too weak to withstand challenge.

As to the alleged comments attributed to Fuller, Plaintiff claims that the statements are "strikingly similar" to the comments at issue in *Staub v. Proctor Hosp.*, 562 U.S. 411(2001), but fails to refer to a single comment at issue in *Staub*. In fact, the statements in *Staub* included scheduling Staub for additional shifts, without notice, to "payback the department for everyone else having to bend over backwards to cover [his] schedule for the Reserves."; stating to co-workers that Staub's "military duty has been a strain on the department" and asking co-workers to "help get rid of him"; referring to Staub's military service as "a bunch of smoking and joking and a waste of taxpayers' money." 562 U.S. at 414.

There are simply no such statements alleged here constituting <u>direct</u> evidence of military animus. In a litany of decisions, the Eleventh Circuit has consistently made clear that "only the most blatant of remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Al-Hafnawi v. Public Health Trust of Miami-Dade Cty.,* 2020 U.S. Dist. LEXIS 119530 (S.D. Fla. Jul. 8, 2020) (quoting *Jefferson*

4

*v. Sewon Am., Inc.,* 891 F.3d 911, 922 (11th Cir. 2018)); *Singleton v. Auburn Univ. Montgomery*, 520 F. App'x 844, 847-49 (11th Cir. 2013); *Byrd v. Postmaster Gen.,* 582 F. App'x 787, 791 (11th Cir. 2014); *Hicks-Washington v. Hous. Auth. of the City of Fort Lauderdale*, 803 F. App'x 295 (11th Cir. 2020) (per curiam); *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989); *Van Voorhis v. Hillsborough County*, 512 F.3d 1296, 1300 (11th Cir. 2008); *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1359 (11th Cir. 1999).

As to the evidence of alleged statements by Fuller enumerated by Plaintiff as items 1-15 on page 6-7 of his Response, they are insufficient as a matter of law to constitute direct evidence of expressed hostility due to military service. These alleged statements, attributed to Fuller, break down into several categories:

(1) alleged statements that Plaintiff was "dumb" or "stupid" (items 5, 6, 7, 12, 14 and 15) - these statements lacked any connection to his military service and were allegedly made in connection with Plaintiff failing tests or completing forms incorrectly. *Murphy v. City of Aventura,* 383 F. App'x 915, 918 (11th Cir. 2010);

(2) alleged statements about Part 135 experience (items 2, 8) - it is undisputed that Part 135 experience was preferred in the posting for the position. Plaintiff lacked any Part 135 experience notwithstanding his seven years out of the military;

(3) alleged statements that military pilots do not pay for flight training (items 1, 4, 10) and that the military would not recognize Fuller's flight experience (item 9) - these are statements of fact lacking the requisite evidence of military animus; and

(4) Fuller knew better qualified people (item 3) - has no connection to military.[2]

---

[2]Here Plaintiff's reference to the transcript at Day 1, 186:12-14 ignores the material testimony at 186:2-6 that admits Fuller only said she knew <u>better qualified</u> pilots and Plaintiff "<u>inferred</u>" she meant pilots without military experience.

Plaintiff next alleges that Fuller demonstrated expressed hostility through her conduct. Pl.'s Response, p.8. Here again, the "conduct" is Plaintiff's claim that Fuller should have extended Plaintiff extra considerations to be "nice," including failing to give Plaintiff extra notice to produce his logbook, failing to ask Plaintiff about the errors and to investigate and correct the errors and discrepancies in Plaintiff's forms, resume and electronic phone app flight log; all things that an employer has <u>no obligation whatsoever</u> to do and that does not, as a matter of law, constitute discrimination.[3] Plaintiff uses these same additional "niceties" that he claims should have been afforded to him as evidence of "hostile conduct" and evidence of "inconsistencies" in the reasons proffered by BSO. Pl.'s Response, p.9. In fact, an employer has no duty to extend employees any additional privileges or considerations and Plaintiff's arguments as to what he believes could have/should have been done is not evidence of discrimination.

Here, the simple fact is that it is undisputed that Plaintiff failed to produce his official logbook. Brian Miller testified that every other (military) pilot produced their records in acceptable form at their interview and only Plaintiff did not and that Miller told him to bring his official records ASAP. Whether Plaintiff disputes this is irrelevant as it is undisputed that on January 10, 2019, Fuller gave a clear directive by group text <u>to all pilots</u> to bring their official logbooks.[4] Trial Tr. Day 2, 20:12-23; Day 3, 75:23-76:1. All other pilots managed to comply and Fuller had no issues <u>whatsoever</u> with the submissions or flight records of any of the other pilots - all military. It is

---

[3] Plaintiff also claims that Fuller refused to give him time off allegedly to attend a VA appointment. Plaintiff produced no evidence that he was entitled to any time off whatsoever after only a few weeks of employment irrespective of the reason for the request. Indeed Plaintiff testified he did not even complete a leave request form.

[4] Plaintiff's Response incorrectly has this date as 2021. Pl.'s Response, p.14.

undisputed that only Plaintiff failed to comply. It is also <u>undisputed</u> that there <u>were</u> discrepancies between Plaintiff's Pilot Experience Form, resume and the only "logbook" that Plaintiff ever presented to BSO. Not only were there inconsistencies between the forms, there were errors and discrepancies in the personal phone app log Plaintiff presented. Thus, it is undisputed that the proffered reasons were <u>true</u>. In fact, Plaintiff's counsel reviewed the internal errors and inconsistencies within Plaintiff's personal phone app logbook ad nauseam at trial, each time acknowledging and highlighting the countless errors and discrepancies. Trial Tr. Day 3, 39-55. As to each of Plaintiff's admitted errors, Plaintiff's questions were the same - why didn't Fuller fix them, ask Thomas to fix them or why didn't she ignore them; each of these questions being entirely irrelevant to demonstrating "expressed" hostility or military discrimination. Moreover, it is undisputed that his personal phone app electronic logbook, Resume and Pilot Experience Form were in fact <u>the only documentation he had provided to BSO to support his flight hours' experience</u>. Joint Pretrial Stipulation p.5, ¶E 25, DE 53; Trial Tr. Day 2, 9, 150-152; Day 3, 58, 77. Plaintiff did not dispute at trial, or as part of the Pretrial Stipulation, that his personal logbook had discrepancies and errors and that there were discrepancies between his personal logbook, Pilot Experience Form, and Resume. Trial Tr. Day 2, 21-22; Day 2, 150-154; Joint Pretrial Stipulation p.5, ¶E 22-23, DE 53. Certainly, discrepancies and errors in flight experience are the type of matter that would motivate a reasonable employer, particularly for a air rescue pilot position.

     Plaintiff's Response fails entirely to address his burden to establish pretext. Simply, Plaintiff failed to demonstrate "such weakness, implausibilities, inconsistencies, incoherencies or contradictions in the proffered reason(s) so that a reasonable factfinder could conclude that it was unworthy of credit." *Herrera v. City of Hialeah,* 2021 U.S. Dist. LEXIS 218033; 2021 WL 5630914

(S.D. Fla. Dimitrouleas, November 10, 2021) (quoting *Landolfi v. City of Melbourne*, 515 F. App'x 832, 835 (11th Cir. 2013).

Plaintiff looks to dispute BSO's proffered reason that Plaintiff failed to verify his flight experience by claiming that Larsen also provided an electronic version of his records that was accepted and that Miller allowed Plaintiff to take a test flight and to receive a job offer. Neither of these reasons are availing to Plaintiff. Both Miller and Fuller accepted Larsen's version of his electronic logbook. Larsen was also a military pilot. Thus, it belies Plaintiff's claim of military discrimination that Miller and Fuller both accepted Larsen's electronic logbook, which they believed to be FAA compliant and did not accept Plaintiff's phone app log, which they believed was not FAA compliant based on their understanding, whether right or wrong.

Miller testified that all he needed to allow Plaintiff to take a flight test was his pilot's license. That testimony was undisputed. Plaintiff was then extended an offer as a "probationary employee," specifically subject to verifying flight experience. The undisputed evidence is that the initial period of probation did not involve flying. Rather, the pilots, including Plaintiff, were all first participating in mandatory training to obtain their EMT license, which would be a further requirement for the position. The undisputed testimony is that Fuller requested the pilots to bring their official logbooks to complete her FAA required records check as they were preparing to proceed to the next phase of the probationary training period involving flight time. Trial Tr. Day 3, 57-58. Again, whether this was the best way to go about this is not an issue before the Court. It is how the employer elected to screen, recruit and train for the new Air Rescue division. These requirements were applied equally to all trainees, all of whom were military pilots, and only Plaintiff failed to produce the documentation of his flight experience to BSO's satisfaction.

Plaintiff claims that his official logbooks could not have been turned over to "just anyone" and so he could not provide them to BSO. That is not BSO'S problem. Plaintiff introduced his military flight records as his exhibit at trial without so much as a confidentiality order or instruction. Pl.'s Ex.9, DE 98-4.  It is undisputed that Plaintiff did not produce his official military flight records to BSO and they are unclassified. Thus, it is undisputed that Plaintiff failed to provide BSO with <u>any part</u> of his official flight records.[5] The only part of his official records that Plaintiff contends were confidential were certain of his **post-military** flight records for work for a contractor that he did in a <u>civilian capacity</u>. As such, these records have nothing to do with military discrimination.  This is precisely what Carol Might testified to. Trial Tr. Day 2, 124:1-19. Ms. Might, however, testified that Plaintiff was able to obtain a release of the non-disclosure agreements from these private civilian contractors so that she could review his records.  He did not bother to do so for BSO.

Plaintiff next contends that Fuller was the decision-maker as to Plaintiff's employment.  There is no evidence that supports such a conclusion.  Fuller's job description as Chief Pilot clearly states that she "reports to the Director of Operations" Def. Ex. 8, DE 96-1.  Fuller drafted an email outlining her findings based on her review of Plaintiff's documentation stating: "my **<u>recommendation</u>** is to release him from service as a pilot trainee." Def. Ex. 11, DE 96-2. The job description is consistent with the testimony that the Director of Operations Jesse Madrigal, military

---

[5] Plaintiff vaguely claimed for the first time at trial that he did provide to BSO (at some unspecified date and time) the official flight records for his R-22 flights he took to satisfy the currency requirement that he flew a certain number of hours in the year proceeding his application to BSO. However, Plaintiff cannot rely on evidence contrary to the Pretrial Stipulation. The Pretrial Stipulation states that the only documentation of his flight experience that he provided to BSO was his resume, his pilot experience form and his personal electronic phone app log. Joint Pretrial Stipulation p.5, ¶E 25, DE 53.  The alleged R-22 records were also not introduced at trial.

pilot (who served on tours of active military duty during his employment with BSO), had the authority to veto Fuller's recommendation and participated in the review of the documentation to make the final determination with Nugent.

Plaintiff goes on to refer to *Staub,* but fails to outline the test in its entirety. Pl.'s Response, p.20. Under *Staub v. Proctor Hosp.,* 562 U.S. 411, 421; 131 S. Ct. 1186, 1193 (2011), even assuming that Plaintiff could establish that Fuller was bias against him due to his military service, which he cannot, the employer avoids liability if the decision-maker undertakes a review that confirms that the decision was entirely justified and substantiated, apart from the supervisor's recommendation. Here, that is precisely what Nugent and Madrigal did. Trial Tr. Day 3, 132-134, 147. Moreover, the decision was justified and substantiated as a matter of law where it is undisputed that the basis was true; that he did not provide his official logbooks and that there were errors and discrepancies in the documentation that Plaintiff provided to BSO to document his flight experience as required of all pilots. "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [his] business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason on the head and rebut it, and [he] cannot succeed by simply quarreling with the wisdom of that reason.'" *Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253,1265-6 (11th Cir. 2010)(quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).

As to the retaliation claim, Plaintiff cannot establish that he engaged in protected activity regarding military discrimination as to either Fuller or Nugent. At pages 22-23 of his Response, Plaintiff outlines the testimony that he claims establishes that he engaged in protected activity. However, it is well established that to constitute protected activity a plaintiff has to do more than

complain about the conduct, he must object to the conduct on the basis that it is discriminatory. *Murphy v. City of Aventura,* 383 F. App'x 915, 918 (11th Cir. 2010). A review of the trial testimony cited by Plaintiff evidences that Thomas' alleged complaints and objections were not predicated on military discrimination. For example, Plaintiff testified that he complained to Fuller about her allegedly calling him stupid for failing an EMT test. Plaintiff testified that he told Fuller that she had no right to tell him this when she had been caught cheating on the EMT test. Trial Tr. Day 1, 181:9-20. Plaintiff's other alleged "complaints" to Fuller are in the same vain and missing the requisite nexus to military discrimination. Similarly, his testimony about what he told Nugent when she met with the pilots as a group on January 18, 2019, was in the form of generalities and conclusory statements that lack sufficient facts from which the Court can determine if the statements can constitute a complaint of discrimination. Plaintiff testified he told Nugent "everything that transpired between him and Fuller," about all the derogatory names, and how she denied him time off to go to a VA appointment. Nothing in his testimony establishes that this exchange was protected activity. Similarly, he testified he told Smith about being called derogatory names, denied his VA appointment and threatened to be replaced with pilots with more Part 135 experience. Thus, Plaintiff failed to establish with sufficient particularity that he engaged in protected activity as to alleged military discrimination.

    In sum, based on the undisputed record, Plaintiff cannot establish that he engaged in protected activity, but even if he could, his alleged complaints could not have been a motivating factor in the challenged employment decision because the actions leading to the decision started before his alleged complaint to Smith. As such, Plaintiff failed to meet his initial burden on his USERRA retaliation claim and Defendant is entitled to judgment in its favor. As fully discussed

above and in BSO's Motion, even if Plaintiff could make out his allegation, which he clearly cannot, the record established that BSO had legitimate non-discriminatory reasons, which were undisputed at trial to be true, which alone justified the adverse action and which Plaintiff failed to rebut as pretext.

Plaintiff's Response fails to present any argument or applicable law in response to BSO's Motion for a new trial pursuant to Rule 59, Fed. R. Civ. P. Because Plaintiff presents no argument or legal authority in his Response, BSO will not address the Rule 59 issue again here, which is fully briefed in BSO's Motion.

Dated: March 18, 2022                                  Respectfully submitted,

                                                            s/Carmen Rodriguez
Carmen Rodriguez (Florida Bar No. 710385)
Email Address: crpa@crlaborlawfirm.com
**Law Offices of Carmen Rodriguez, P.A.**
Palmetto Bay Centre
15715 South Dixie Highway, Suite 411
Palmetto Bay, Florida 33157-1884
Telephone: (305) 254-6101
Facsimile: (305) 254-6048
Attorneys for Defendant

12