IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**Broward Division**

SCOTT THOMAS,   CASE NO.: 19-61324-CIV-DIMITROULEAS

  Plaintiff,
v.
BROWARD COUNTY SHERRIFF'S OFFICE,
  Defendant.
_____/

**PLAINTIFF'S SCOTT THOMAS' REPLY TO DEFENDANT BROWARD COUNTY SHERRIF'S OFFICE'S RESPONSES TO PLAINTIFF'S MOTION FOR ATTORNEY FEES**

**COMES NOW,** Plaintiff Scott Thomas, by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 50(b) and Rule 59, hereby files his reply to Defendant Broward County Sheriff's Office's ("BSO") Response to Plaintiff's Motion for Attorney's Fees, and as grounds therefore states:

**I.   ARGUMENT**

A.   **DEFENDANT'S ARGUMENT THAT PLAINTIFF FAILED TO COMPLY WITH RULE 7.3 CONTINUES TO DISCREDIT THE HONORABLE DIMITROUELEAS' RULINGS FROM THE BENCH AND THE DISCRETION OF FEDERAL DISTRICT COURT JUDGES.**

As stated in length in Plaintiff's Motion itself, Plaintiff sought, and successfully obtained, an extension of time to file his Motion for Attorney's fees. This motion was filed weeks before the Motion was due, but *after the Meet and Confer requirement had already passed*. This fact—directly stated in Plaintiff's Motion for Extension of Time and Plaintiff's Motion for Attorney's fees—has been *repeatedly* overlooked by Defendant.

Defendant argues that Judge Dimitroueleas granted Plaintiff an extension (through April 8, 2022) on March 21, 2022, "but did not grant Plaintiff any other relief he had requested and

particularly *did not waive any of the requirements of Local Rule 7.3*." ECF No. 123, at 2; *see also* ECF No. 119 (Order Granting Motion). Defendant continues to selectively disregard the fact that this Order—which mentions *nothing* about the Meet & Confer requirement—was entered *after* the Meet and Confer deadline *was already past due*. Indeed, Defendant expressly states in its response that "even with the extension, the draft Motion for Attorney's Fees would have been due to Defendant on March 9, 2022." This argument fails to acknowledge the reality that the Judge's Order was entered on March 21, 2022; for reasons unknown, Defendant continues to argue that Plaintiff must have, somehow, complied with the Local Rule Retro-Actively after the Judge's Order. This argument is unintelligible and grounded in scorn instead of reason.

Plaintiff is not a time traveler. Instead, Plaintiff proactively did the very only thing in his capacity to do: he admitted the oversight, brought the attention of Plaintiff's other pending cases with federal deadlines to the attention of the judge (which were also before him), brought the unlikelihood of meaningful meet and confer negotiations to the attention to the Judge (in large part due to the attitude of the Defendant, which is additionally discernable through its Response to this very Motion), and requested relief that attempted to comply with all local rules. This Honorable Court considered all the argument—*including those of Defendant*, similar to those made here—and granted Plaintiff the requested relief.

While the Federal Rules of Civil Procedure provides Defendant with grounds on which to challenge a Courts order by way of Rule 60, Defendant has not moved for such relief; nor has Defendant cited any grounds that would entitle them to same. As it is well established, "a district court must be able to exercise its managerial power to maintain control over its docket." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004). While Plaintiff acknowledges that "deadlines are not meant to be aspirational" and a district court retains the discretion to refuse to

accept an untimely filed motion, Defendant seems to forget that the district court retains an equal amount of discretion to *grant* an extension. *Id.* Instead of acknowledging this discretion, Defendant seems to argue that the District Court *must* reject *all* "untimely" motions (pursuant to its own definition). This simply isn't so. Indeed, in the very likely instance of appeal should an order be issued in Plaintiff's favor, it will be reviewed for abuse of discretion. *See e.g., id.*; *Quinn v. Deutsche Bank Nat. Tr. Co.*, 625 F. App'x 937, 939 (11th Cir. 2015). When a "district court's decision under the abuse of discretion standard, [the Appellate Court's] review is limited; and [] give[s] the court "considerably more leeway than if we were reviewing the decision de novo." *Young*, 358 F.3d at 863 (quoting *Cason v. Seckinger*, 231 F.3d 777, 786 (11th Cir. 2000). Absent "a clear error in judgment," the discretion of the District Court must be affirmed. *Id.*

Also of note, the caselaw relied on by Defendant—and in particularly *Norych*—evidenced a complete disregard for Local Rule 7.3. Indeed, the Plaintiffs in these cases made little effort to comply. *See, e.g.*, *Norych v. Admiral Ins. Co.*, No. 08-2018 U.S. Dist. Lexis 4563 (.D. Fla. Jan. 9, 2018) (wherein the Plaintiff admitted they made no effort comply and requested no advance relief from the Judge); *J.B. Hunt Transp., Inc. v. S & D Transp., Inc.*, 589 F. App'x 930, 933 (11th Cir 2014) (wherein Plaintiff admitted they made no effort to provide a draft and engage in good faith negotiations). These cases are equally distinguished from the present, wherein Plaintiff requested permission to waive the Meet and Confer requirement as futile, wherein Plaintiff requested an extension to obtain the Meet & Confer deadline (which was granted but still left Plaintiff unable to fully comply), and wherein Plaintiff did in fact send a *draft* to opposing counsel, albeit, absent only the affidavits.

B.  **PLAINTIFF HAS, IN FACT, COMPLIED WITH ALL RELEVANT PROVISIONS OF RULE 7.3 DESPITE DEFENDANT'S ARGUMENTS TO THE CONTRARY**

Both before and after the Honorable Court's Order was issued granting Plaintiff an extension of time to file his Motion for Attorney Fees, Plaintiff attempted to meet and confer with Defendant. Prior to filing to the issuance of the Order, Defendant wholly refused to engage in the discussion on the grounds that "Plaintiff was in violation of Rule 7.3." Defendant expressly told the undersigned that they would not be meeting and conferring unless and until they were ordered to do so by a Judge. After the order was issued, a *draft* (defined as a preliminary version of a piece of writing or document) was tendered to opposing counsel that met all of the requirements of Rule 7.3. *See* Exhibit A.

Indeed, Local Rule 7.3 states that the motion shall, "(1) be filed and served within sixty days (60) days . . . (2) identify the judgment or other order which gives rise to the motion, as well as the statute, rule, or other grounds entitling the moving party to the award; (3) state the amount sought; (4) disclose the terms of any applicable fee agreement; and provide: (A) the identity, experience, and qualifications for each timekeeper for whom fees are sought; (B) the number of hours reasonably expended by such timekeeper; (C) a description of the tasks done during those hours; and (D) the hourly rate(s) claimed for each timekeeper; (6) describe and document with invoices all incurred and claimed fees . . . (7) be verified; and (8) certify that a good faith effort to resolve the issues by agreement occurred . . ."

The draft motion supplied to Defendant's counsel, attached hereto as Exhibit B, meets the requirements above. Specifically, it was filed and served within 60 days, it identified the grounds that gave rise to the Motion–i.e. attorney fees under 20 CFR § 1002.310–and clearly stated the amount sought. The draft provided the hours worked by all timekeepers (see exhibits to Plaintiff's Exhibit A attached hereto) and described the attached documents. The hourly rate of each

timekeeper, including the qualifications of each time keeper giving rise to said hourly rate, were expressly stated in the Motion (which was also verified and certified that a good faith meet and confer effort had been attempted). Thus, Plaintiff has complied with all of the requirements in the Local Rule. Of note, the affidavits Defendant complains of are *not* required by the Local Rule; as such, Defendant's argument lacks legal effect.

C. **DEFENDANT IRREFUTABLY OBJECTS TO THE REASONABLENESS OF PLAINTIFF'S HOURLY RATE; THUS, THE AFFIDAVITS ABSENT FROM PLAINTIFF'S MOTION DRAFT ARE HARMLESS AND HAVE NO EFFECT**

Plaintiff admits that the draft of his Motion did not contain affidavits of support, as did the Motion filed with the court. It did however, include all relevant time billings of the undersigned, Alexandra Kirby, and David Colls. It also took similar (albeit not identical) form to the Motion submitted, despite Defendant's argument to the contrary. For that reason, and in full transparency with the Tribunal, the Draft provided to opposing counsel has been attached hereto as Exhibit B; the Draft submitted to the Court is attached hereto as Exhibit A.

It is important to remember *what these affidavits support*: the reasonableness of Plaintiff's hourly fee. Defendant has lodged a multitude of arguments as to why Plaintiff's hourly rate is unreasonable and excessive. It strains logic that the affidavit of the undersigned himself (that Defendant argues was lacking from Plaintiff's Motion) would somehow change Defendant's mind as to the reasonableness of these fees. Indeed, it strains logic that any of the affidavits would have effect on the arguments raised by Defendant's Motion. As such, there is no "prejudice" to the Defendant, despite its strong accusations to the contrary.

D. **THE UNDERSIGNED'S HOURLY FEE IS REASONABLE, UPON WHICH DEFENDANT'S HOURLY RATE HAS NO EFFECT**

By way of its Motion for Attorney's fees, the undersigned lists several reasons as to why his hourly rate of four hundred dollars an hour is *reasonable*. To wit, the undersigned sites prior USERRA experience, a career of 20 years devoted exclusively to employment law, and his

intimate knowledge of aviation (and military operations) he learned as a member of the Canadian Air Force. Most importantly, he obtained an excelled result as to the entirety of Plaintiff's claims. *See Hensley v. Exkerharty*, 461 U.S. 424, 440 (1983) (stating that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees. . ." under Title VII, similar to USERRA).

Defendant nonetheless raises several arguments in opposition, including: (1) the undersigned has not demonstrated he was every awarded this amount in a Federal Court in the Circuit (which alone is not dispositive); and (2) Defendant's counsel respective hourly rate is only one hundred and fifty dollars (which has no legal effect on the reasonableness of the undersigned's hourly rate). Defendant also raises a curious third argument: "[t]he Court did not believe that Plaintiff's case had great merit . . . [which] the Court was compelled to conclude 'I think it's a very week case.'" ECF No. 123 at 8. This argument is also without legal effect, and in fact only proves that the undersigned's skills were *so impressive*— i.e. worthy of compensation—that he was able to secure a favorable result in Plaintiff's favor despite the alleged "weak merit" of the case. Indeed, all of Defendant's arguments are equally unconvincing.

Not only is the amount of 400 dollars an hour reasonable in light of Plaintiff's experience, but Defendant's counsel seems to overlook the patent differences inherent in contingency fee cases and defense work. Defense counsel's hourly rate is guaranteed to her for every hour that she expounds on the case, it does not take into account the "riskiness of success." Indeed, as opined by the United States Supreme Court, "the risk of not prevailing, and therefore the risk of not recovering any attorney's fees is a proper basis on which a district court may award and upward adjustment . . . ." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 717 (1987) (quoting Justice Brennan in *Blum v. Stenson*, 465 U.S. 886 (1984)). Even

absent this well-settled precedent, the skill, experience, and hourly charge of Defendant's counsel is of no effect upon to the skill, experience, and hourly charge of the undersigned. Surely, attorneys of different capacities and calibers litigate against each other every day.

E.     **DEFENDANT'S RELIANCE ON THE PRETRIAL STIPULATION IS MISPLACED AND OVERLOOKS ITS FUNCTION**

By way of the parties Joint Pretrial stipulation, Plaintiff estimated that they had incurred $64,000 of attorney's fees, calculated by multiplying the hours previously expounded by Plaintiff in litigation (150) by the undersigned's hourly rate (of $400, and of which the Defendant had ample notice of despite other arguments raised). There is nothing ingenuine about this statement. Indeed, the 64-thousand-dollar estimate did *not* include—nor could it have included—the exorbitant amount of hours spent in trial preparation, attending trial, and responding to Defendant's plethora of meritless post-trial motions.

As explained in Defendant's very own motion, the undersigned spent an excess of one hundred hours opposing Defendant's Rule 50(b) Motion, which included the through review of every line of the Trial Transcript spanning four days. It should be noted that Plaintiff was again successful in his efforts; Defendant's Motion was denied and the verdict was upheld (now under appeal). It strains logic that Plaintiff would be mandated to continue to work in opposing Defendant's post-trial motions while being held to a conversative *estimate* made in a Pretrial Stipulation that bars his recovery of the time spent obtaining yet another successful result.

Defendant's Motion also conflates the discretion of Parties to deviate from issues of *law* they are generally bound to through their voluntary pretrial stipulations, with the district courts broad discretion in determining whether to hold a party to their stipulation. Here, Plaintiff did no more than state an *estimate* of attorney's fees he had incurred *pretrial*. Defendant is now

improperly trying to use this statement as an absolute ceiling to Plaintiff's recoverable attorney's fees *post trial* which would cause a manifest injustice to Plaintiff. Indeed, a contingency fee agreement already secures the payment of the undersigned fees. If this Honorable Court denies Plaintiff's Motion, he will still be responsible for paying same, albeit it out of his own portion. Therefore, the only person to suffer injustice is not the undersigned, but rather, the Plaintiff Scott Thomas (who has just undertaken a three-year litigation against his former employer that has caused him significant unrest and strife).

F. **PLAINTIFF'S TIMESHEETS FOR PARALEGAL EXPENSES ARE "IDENTICAL" FOR NO OTHER REASON THAN THEY ENGAGED IN IDENTICAL WORK, WHICH WAS CONSERVATIVELY ESTIMATED (IF NOT GROSSLY UNDERVALUED) FOR THE PURPOSE OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES TO DEFENDANT'S BENEFIT.**

Defendant's Motion argues that the billing statements of the undersigned's two law clerks are "most troublesome." At the outset, it is important to note that law clerks Alexandra Kirby and David Colls tendered statements in the nominal amount of 169 and 152 hours, respectively. As Defendant is well aware, Alexandra Kirby worked on this case from its inception, and was intimately involved in every aspect of its litigation.

As wholly unacknowledged by Defendant, Alexandra Kirby's billing statements have aired on the *extreme* side of caution and are conservatively estimated (if not grossly understated). Indeed, Ms. Kirby's time entries only include the time spent engaged in Trial preparation, Trial attendance, and the Opposition of Defendant's voluminous post-trial motions. As a third-year law student, first in her class, and current Managing Editor of *Nova Law Review*, Ms. Kirby's experience (and involvement in this case) far surpasses that of most legal secretaries and was invaluable in securing a verdict in Plaintiff's favor.

The time entries of Mr. Colls are similarly conservative. Mr. Colls was also involved in this case for the better part of one year, and only billed for his time spent physically in trial or preparing

for trial.  All time Mr. Colls spent on this trial was spent under the direct supervision of Alexandra Kirby; thus, their hours are identical because they *were identical*.  In sum, the "gross error" Defendant relies on is the direct product of its attempt to be as prudent and conservative as possible (in Defendant's favor).

## I.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Court award Plaintiff SCOTT THOMAS fees and expenses in the amount of $190,840.00, constituting Attorney's Fees incurred by Andrew Obeidy in the amount of $158,740, paralegal fees incurred by Alexandra Kirby in the amount of $16,900, and paralegal fees incurred by David Colls in the amount of $15,200, as detailed in the affidavits and detailed billing statements filed contemporaneously with Plaintiff's original motion.

Dated this 28th day of April 2022.

                                            Respectfully submitted,
                                            */s/ A. Andrew OBeidy*
                                            A.  ANDREW OBEIDY, ESQ. (FBN 0910341)
                                            2755Oakland Park Blvd. Suite 225
                                            Fort Lauderdale, FL 33305
                                            Telephone: (305) 892-5454
                                            andrew@obdlegal.com

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this 28th day of April, 2022 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:*/s/ Andrew Obeidy*
Andrew Obeidy, Esq.